No. 48,151

State of Kansas, *Appellee*, v. Donald W. Howard, *Appellant*.

(557 P. 2d 1280)

Opinion filed December 11, 1976.

*Cortland Q. Clotfelter,* of Bradley & Clotfelter, of Wichita, argued the cause, and was on the brief for the appellant.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Keith Sanborn,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Miller, J.: Donald W. Howard appeals from his conviction by a jury of unlawfully using a credit card to obtain property of the value of more than $50 in violation of K. S. A. 21-3729 (1) (*a*), a class E felony, and from his sentence to imprisonment for not less than one nor more than five years.

The main thrust of defendant's argument on appeal is that the statute requires that a credit card be physically produced and displayed in the commission of the offense. Based upon this premise, Howard contends that the evidence failed to establish a *prima facie* violation of the statute, and that the court erred in its correlative instructions to the jury. Additionally, he claims that the court erred in refusing him a requested continuance, in declaring a mistrial, and in making reference in the instructions to matters not in evidence.

Mrs. Glen Taylor was employed at a Safeway store in Wichita, Kansas on March 27, 1974. At approximately 10:45 o'clock that morning she took a coffee break, and at the end of the break she

placed her purse on a shelf inside of the courtesy booth. Next, the defendant was observed in the store. He walked past the manager at the number one checkstand, proceeded out the door, entered a brown car, and drove off. Shortly after 11 o'clock a. m. the manager found Mrs. Taylor's purse lying open on the floor, six to twelve feet away from the courtesy booth. Her billfold, containing her Sears credit card, social security card, and Missouri driver's license, was missing. The credit card was in the name of Glen Taylor. The card had not been cancelled or revoked, and the Taylors had not given anyone permission to use it.

On the same date defendant and Terence Walters appeared at the television department of a Sears store in Wichita. Defendant stated that his name was Glen Taylor. He selected a nine-inch portable color TV set priced at $279.95, plus tax. He purchased it on credit, giving the clerk the number of the Glen Taylor credit card account. Howard had the number written down on a piece of paper; he did not show a credit card to the salesman. When asked for further identification he said that he had to go downstairs, that his wallet had been stolen, but his wife had her identification with her. The defendant left and returned shortly, producing Mrs. Taylor's social security card and Missouri driver's license, and saying that these belonged to his wife. Defendant signed the sales slip "Glen Taylor" and then left the store, taking the TV set with him.

That afternoon, the defendant and Walters entered King's Pawn Shop in Wichita and attempted to pawn the portable color TV set, which was still wrapped and in the original box. The proprietor refused to make the loan and Howard and Walters departed, leaving behind the wrapping paper and sales slip.

Later that day, at approximately 5 o'clock p. m., defendant and Walters entered Local Loan North, another Wichita pawn shop, and pawned the portable color TV set for $100. Defendant again represented himself to be Glen Taylor and had that name written on the pawn ticket. The set was identified by serial number.

The statute involved reads in applicable part as follows:

K. S. A. 21-3729. "(1) Unlawful use of a credit card is any of the following acts done with intent to defraud and for the purpose of obtaining on credit money, goods, property, . . . or . . . services . . .:

"(a) Using a credit card issued to another person or entity without the consent of the person or entity to whom it is issued; or

"(b) Knowingly using a credit card, or the number or description thereof, which has been revoked or canceled; or

"(c) Using a falsified, mutilated, altered or nonexistent credit card or a number or description thereof.

"(2) The term 'credit card' as used herein means an identification card or device issued by a business organization authorizing the person or entity to whom it is issued to purchase or obtain goods, property or services on credit.

. . . . . . . . . . . . . . .

"(4) Unlawful use of a credit card is a class E felony if the money, goods, property, services or communication services obtained within any seven (7) day period are of the value of fifty dollars ($50) or more . . ."

The information charged a violation of subsection (a) substantially in the words of the statute: that the defendant did "unlawfully, wilfully with the intent to defraud Sears, Roebuck and Company . . . and to obtain property, to-wit: a Sears brand color television set, #54260607, and 1 pair of men's dark brown 14 inch western boots, size 10D, of the value of over $50, . . . use . . . Sears Credit Card No. 7-50201-501459, issued to Mr. Glen Taylor without the consent or authority of said Mr. Glen Taylor."

The trial court instructed on the elements of the offense (see PIK Criminal, 1975 Supp. § 59.34) in language substantially following the statute and the information, and in addition, and over the defendant's objection, gave instruction No. 7, as follows:

"To find that the defendant 'used a credit card', you must find either:

"1. That the defendant displayed or physically delivered the credit card for the purpose of obtaining property, goods or services; OR

"2. That the defendant acquired a number from a credit card and used that number for the purpose of obtaining property, goods or services."

Defendant points out that subsections (b) and (c) of K. S. A. 21-3729 (1) make it unlawful, under certain circumstances not here present, to use the *number* or description of a credit card. Subsection (a) contains no such language. Thus defendant claims that the evidence is insufficient to make out a *prima facie* case because there is no evidence that he displayed the actual credit card or "used" it in making the "purchase." He likewise contends that paragraph (2) of instruction No. 7 misstates the law. Ingenious as this line of argument is, it is erroneous. "Use" is a verb of common usage. Ordinarily it means to employ; to avail oneself of; to utilize; to carry out a purpose or action by means of; to put into action or service, especially to attain an end. Webster's New Collegiate Dictionary, 1975.

The state's evidence, liberally construed as it must be, shows that the defendant pilfered three items—the credit card, the social

security card, and the driver's license. He then utilized all three without the consent of the owner for the purpose of obtaining fraudulently, on credit, the TV set. He availed himself of the credit card and took from it the credit account number for a fraudulent purpose. Such use of the card, we believe, is clearly proscribed by the statute. Instruction No. 7 (2) required the jury to find that the defendant "acquired a number from a credit card and used that number . . ." The taking of a number from a credit card for the stated purpose is an *unlawful use* of the card under the statute.

We are not unaware or unmindful of the rule requiring strict construction of penal statutes in favor of the persons sought to be subjected to their operation. *State, ex rel., v. American Savings Stamp Co.,* 194 Kan. 297, 398 P. 2d 1011; *State v. Bishop,* 215 Kan. 481, 483, 524 P. 2d 712. The rule simply means that ordinary words are to be given their ordinary meaning. It does not permit or justify a disregard of manifest legislative intention appearing from plain and unambiguous language. *State v. Walden,* 208 Kan. 163, 166, 167, 490 P. 2d 370. Upon a careful reading of the statute, could one be led to believe that defendant's actions were not forbidden? Clearly not. He used the card to gain the account number. He represented that he had the card and that it had been issued to him. He usurped the *credit* that the card represented. The clear import of the statute here under consideration is to bar fraudulent use of credit cards, and that includes the fraudulent use disclosed by this record. We hold that the evidence discloses a *prima facie* violation of the statute, and that instruction No. 7 was not erroneous.

Defendant gave notice of alibi and listed as his alibi witness, Willie Coleman. He issued two subpoenas for Coleman, giving first his residence and later his employment address. The sheriff was unable to find the witness. Defense counsel's secretary attempted to reach Coleman by telephone and talked with his sister, who agreed to tell him when to appear. When the defense was ready to present its case on the third day of the trial, the witness failed to appear. The court granted a half-day continuance until 1:30 o'clock that afternoon. Counsel for the defendant then sought a two-week continuance which the court denied. There was no showing of what the witness would say, nor was there any indication that the witness could be reasonably expected to appear if a continuance were granted. On motion for new trial defense counsel stated that the address given on the subpoena, prepared by counsel's secretary,

showed "911 Piatt" and this was an error; the correct address was "1911 Piatt." The correct address would appear to be only 15 to 20 blocks from the Sedgwick County courthouse where the case was tried. K. S. A. 22-3401 provides that continuance may be granted to either party for good cause shown.

As Justice (now Chief Justice) Fatzer stated in *State v. Hemminger*, 203 Kan. 868, 870, 457 P. 2d 141, cert. den., 396 U. S. 1045, 24 L. Ed. 2d 689, 90 S. Ct. 696:

"The well-established rule in this jurisdiction is that the granting or denial of continuance in a criminal prosecution is largely within the sound discretion of the district court, and its ruling will not be disturbed in the absence of a showing that there has been an abuse of discretion which has prejudiced the defendant's substantial rights. . . ."

And see, *State v. Bentley*, 218 Kan. 694, 695, 545 P. 2d 183.

When a continuance is requested during the trial of a case, the trial judge must weigh the many factors involved—possible prejudice to the defendant, the diligence (or lack of it) disclosed in attempting to secure the attendance of the witness, the materiality and importance of the probable testimony, and the probability of the witness' appearance at a later date if the continuance is granted. Upon the facts disclosed in this record, the trial judge did not abuse his discretion in failing to grant the requested two-week continuance.

Defendant next claims that the trial court erred in declaring a mistrial. A jury was selected on the morning of September 16, 1974. The *voir dire* was completed shortly before noon and the trial was recessed until after lunch.

It is apparent from the record that the court advised counsel that one of the jurors came to him during the noon hour and disclosed that the juror had heard from his wife over the lunch hour. His wife had gone to school with the defendant and she was very much afraid of him. She placed substantial pressure on her husband regarding how he might vote and how he might act as a juror in the case. Counsel for the defendant conferred with his client and advised the judge that the defendant would not consent to be tried to a jury of less than twelve. When court reconvened the judge explained to the jury that something had come up during the noon hour which required the court to excuse one of the jurors. Since the defendant did not wish to proceed with a jury of less than twelve, the judge declared a mistrial and excused the remaining eleven jurors.

Defendant moved promptly for a judgment of acquittal for the reason that the jury had been sworn and jeopardy had attached. The court stated:

". . . [T]he Court is bound to see that this defendant gets a fair trial. "Now, after talking to the juror that the Court excused, it's my opinion . . . that it is impossible for him to sit as a juror in this case and give this defendant a fair trial. . . . And it's my opinion that . . . the Court has not only [the] right, but in this particular case [the] duty, to declare a mistrial and start all over again. . . ."

A new panel of jurors reported that same afternoon, a new jury was selected, and the trial proceeded. Appellant contends that it was error for the court to declare a mistrial without providing in the record sufficient basis for the declaration of a mistrial and without affording counsel an opportunity to inquire of the particular juror on the record, the nature of the problem he had in serving on the jury.

As we have noted, the record indicates that the judge conversed with the juror off the record during the noon hour. He then advised counsel of the situation so that the parties were not surprised by the action taken by the judge when court reconvened. Counsel for the defendant made no request to examine the juror in open court.

A fact situation similar to that in the case at bar is found in *State v. Hansford,* 76 Kan. 678, 92 Pac. 551. During trial a juror announced that when he heard certain testimony, it refreshed his memory and aroused such a prejudice that he felt that he could not try the case fairly. The trial judge dismissed the juror and declared a mistrial; defendant objected to the ruling and raised double jeopardy when the case was brought to trial. Upon appeal this court said:

". . . If the disqualification is such as would frustrate the ends of justice and prevent a lawful verdict the rights of the defendant, as well as the interests of the public, require the court to arrest the progress of the trial and start afresh with a legal and impartial jury. If during the trial the court should learn of a corrupt interference with a juror or that through some outside sinister influence one of the jury had agreed to vote for conviction regardless of the testimony it would be conceded that a pressing necessity for the discharge of the jury had occurred. When a juror, as in this case, confesses to an incurable prejudice which disqualifies him from exercising the functions of a juror or acting impartially as between the parties a continuance of the trial would be a farce, as the object of a trial—a fair and impartial verdict—becomes an impossibility. After learning of this situation by a judicial

inquiry nothing was left for the court except to discharge that jury and impanel another.

.   .   .   .   .   .   .   .   .   .   .   .   .

"The sufficiency of the inquiry and of the finding of a necessity for the discharge is challenged. To warrant a discharge it has been decided that there must be, 'first, an absolute necessity for such discharge; second, the court must make inquiry and find and determine that such necessity existed at the time of the discharge; and, third, the essential facts as to such necessity and the finding of the court thereon must be made a matter of record; or the defendant may successfully plead former jeopardy when placed on trial on the same charge.' (*The State v. Allen,* 59 Kan. 758, 761, 54 Pac. 1060.)   .  .  . The facts brought out in the inquiry, as well as the findings of the court, were made a matter of record, thus complying with the rule stated in *The State v. Allen, supra.*" (pp. 682-687.)

For other cases dealing with similar problems, see *State v. Gray,* 189 Kan. 398, 369 P. 2d 330; *State v. Finley,* 208 Kan. 49, 490 P. 2d 630; and *State v. Rhodes,* 219 Kan. 281, 546 P. 2d 1396.

It is within the discretion of the trial court to declare a mistrial in a criminal jury trial when it is shown that a juror is or becomes so prejudiced during the trial that he or she cannot serve as a fair and impartial juror and give both the state and the defendant a fair trial. Applying that rule to the case before us leads us to the conclusion that the trial judge did not abuse his discretion in the action taken. We note that the essential facts showing the necessity for this action appear in the record after the mistrial was declared. The better practice would be to have the juror sworn and to permit counsel to examine him in open court, out of the hearing of the other jurors. However, counsel were here notified of the developments by the trial judge during the noon recess and neither counsel requested an opportunity to examine the juror nor was there any objection by the defendant to the procedure prior to the time the juror was excused and a mistrial was declared. We conclude that the record establishes a sufficient basis for excusing the juror and declaring a mistrial, and that under the circumstances it would have been error to proceed with trial with this juror as a member of the panel.

Finally, defendant contends that it was error for the court to make reference in instructions 2 and 6 to a pair of men's boots, since the boots were not in evidence. The information charged the defendant with the fraudulent use of a credit card to obtain a TV set and a pair of boots. Defendant's objection to the state's proffered testimony relating to the boots was sustained. The court

instructed the jury that the state was not required to prove that the defendant obtained both the TV set and the boots. Under the circumstances this instruction was proper.

The judgment is affirmed.