(177 P.3d 1001)
No. 97,338

STATE OF KANSAS, *Appellee*, v. BRENT HUNTLEY, *Appellant*.

Opinion filed March 7, 2008.

B. *Joyce Yeager*, of Yeager Law Firm, LLC, of Overland Park, for appellant.

*Amory K. Lovin*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before GREEN, P.J., GREENE and LEBEN, JJ.

GREENE, J.: Brent Huntley appeals his multiple convictions of rape and aggravated criminal sodomy of his own young children, arguing insufficiency of evidence at preliminary hearing and at trial, error in refusing to disqualify a juror, error in the admission of certain evidence, instruction error, and abuse of discretion in denying the defense a continuance in order to retain an expert witness to assist in evaluating the child witnesses' testimony. We agree that the district court abused its discretion in denying the continuance solely on the grounds that any testimony from such witnesses would be inadmissible and that rescheduling the trial might be difficult; accordingly, we must reverse Huntley's convictions and remand for a new trial.

## Factual and Procedural Background

Huntley was charged with multiple counts of rape and aggravated criminal sodomy after a spring-break visit by his 5-year-old biological daughter, M.E., and her 4-year-old half-brother, S.M. The children initially reported Huntley's conduct to a school counselor and their natural mother, and they ultimately discussed the

alleged sexual abuse during forensic interviews at Sunflower House in Kansas City, which interviews were recorded by videotape. Further detail of the allegations will be discussed in connection with our analysis of the sufficiency of the evidence.

Prior to trial, the defense moved for a continuance in order to retain an expert to examine the videotaped statements of the children to render an opinion on the words they used and their mannerisms. The district judge denied the motion, stating:

"Your motion for continuance is denied. I'll note two specific reasons for that. First off, probably the most important is I'm not sure even if you and the State of Kansas paid for the money to hire whomever you were going to hire to look at these tapes, that this Court was going to allow that testimony to come in. I think that you can, by cross-examination, question the people as to can kids be led, and are they subject to that? I think jurors normally know those things just because they've had kids and therapy kids. And so, some of those things are not expert testimony type issues, they are common sense. Certainly the law is clear for you to have an expert to come in and say, 'I've looked at these tapes, and this girl was lying. I don't know who made her lie, but she's lying,' is not the appropriate testimony, not appropriate expert testimony. You can argue that she is mistaken or confused or whatever to the jury, and the jury may well find that to be the case. I don't know the facts in this case at all. But certainly that is within the province, the sole province of the jury to decide who's telling the truth and who's not in this case and in ever criminal case. Secondly, if I granted your motion, even though you had suggested to me might be available to go back to trial next month, this Court couldn't put you back on a jury trial docket until March at the next time. I was not prepared, and based clearly on the reason I had from a number one situation to put Mr. Huntley and make him stay in jail another four months before trial merely over the subject of an expert I might not let testify based on my understanding of the law in Kansas at this point in time. So, with those reasonings in mind that's why I denied your motion."

The jury convicted Huntley on six counts of rape and seven counts of aggravated criminal sodomy. He was sentenced to 362 months' imprisonment. He timely appeals.

### Was the Evidence Sufficient to Support the Rape Convictions?

Before we turn to Huntley's other claims of error, we must determine whether the evidence was sufficient to support his convictions in any event. When the sufficiency of the evidence is reviewed in a criminal case, this court must consider all of the evidence,

viewed in a light most favorable to the prosecution, and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Parker*, 282 Kan. 584, 597, 147 P.3d 115 (2006).

At the outset we address Huntley's claim that there was insufficient evidence presented at the preliminary hearing to bind him over for trial. We deem any such insufficiency harmless because when the accused has gone to trial and been found guilty beyond a reasonable doubt, any and all error at the preliminary hearing stage is harmless unless it appears that the error caused prejudice at trial. *State v. Butler*, 257 Kan. 1043, 1062, 897 P.2d 1007 (1995), *modified on rehearing* 257 Kan. 1110, 916 P.2d 1 (2006). Huntley does not argue nor do we conclude that any such insufficiency of evidence at the preliminary hearing prejudiced him at trial. Thus, Huntley's challenge to the sufficiency of evidence at preliminary hearing is rejected.

Huntley also contends, however, that the evidence at trial was insufficient to support all six of his convictions of rape because it failed to establish six acts of intercourse with his 5-year-old daughter. No such challenge was made to the aggravated sodomy convictions.

K.S.A. 21-3502(a)(2) proscribes sexual intercourse with a child who is under 14 years of age. "Sexual intercourse" for purposes of the crime of rape means "any penetration of the female sex organ by a finger, the male sex organ, or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse." K.S.A. 21-3501(1). "Penetration is an element of rape, but any penetration, however slight, is sufficient. To establish this element, actual penetration of the vagina or rupturing of the hymen is not required; penetration of the vulva or labia is sufficient." *State v. Borthwick*, 255 Kan. 899, 914, 880 P.2d 1261 (1994) (citing *State v. Ragland*, 173 Kan. 265, 268, 246 P.2d 276 [1952]).

M.E. told the interviewer that Huntley put his private in her private and that she had bled. M.E. identified several body parts on anatomical dolls, indicating that the male doll had a "tally whacker" and the female doll had a "kitty," and that both of those were privates. M.E. used the dolls to demonstrate that Huntley

would lie behind her and told the interviewer that "daddy tried to put his tally in her kitty, and that she had blood on her underwear." On two separate occasions during her interview, M.E. told the interviewer that this happened six times.

At trial, M.E. testified that she remembered talking to a lady at Sunflower House about what Huntley did. She remembered using dolls to show what Huntley did, and she confirmed that she was telling the truth. M.E. testified that she remembered telling the lady how many times Huntley performed the acts and that she was telling the truth about this. On cross, Huntley elicited testimony that M.E. was unsure about how many times the abuse happened, but it "could have been one time."

The last date that the State alleged the abuse occurred was March 26, 2005. Dr. Kay Ruth Farley testified that she performed a physical examination of M.E. at Sunflower House on May 11, 2005. Farley testified that the examination was normal, that M.E.'s hymen appeared intact, and that there was no evidence of trauma. Farley explained, however, that the absence of injuries did not mean that the abuse did not occur. Farley testified that often in child sexual abuse cases the injuries consist of "redness, some swelling, maybe a bruise, maybe a little bit of friction like a rug burn that might bleed. Minor injuries that tend to heal quickly." Farley, testified that the absence of injuries would be consistent with a child's disclosure of sexual abuse. Farley gave the jury a lengthy description of the female genitalia of a prepubital girl and testified that penetration of the outer lips or labia could occur if the abuse involved a penis coming from behind and rubbing forward.

On cross-examination, Farley testified that a normal pelvic examination could also indicate that no sexual abuse occurred. Farley testified that if vaginal penetration had occurred, she would expect to see a tear in the hymen. Farley restated that if M.E. was abused and the abuser was lying behind her, there could have been penetration of the "outside lips" of the vagina. On redirect, Farley testified that there could be penetration of the lips without any injury to the hymen. Farley testified that, if the acts occurred as M.E. demonstrated with the dolls, there "most likely" would have

been penetration of the vaginal lips. M.E. told the interviewer and her mother that she had bled. Farley testified that rubbing of the labia can cause "rug burn" type injuries that could bleed. Penetration of the labia is sufficient to constitute sexual intercourse as required for the charge of rape. *Borthwick*, 255 Kan. at 914.

The videotaped statements of M.E. recounting six incidents, coupled with the opinion of Farley as to penetration consistent with the position described by M.E., convince us that a rational factfinder could have found Huntley guilty beyond a reasonable doubt. We acknowledge the more equivocal live testimony of M.E. at trial, but a rational factfinder could have surmised that M.E. was uncomfortable in the trial setting and that her videotaped statements were more reliable.

Huntley also implies that there was insufficient evidence to support that six acts of rape occurred during the week of March 17, 2005, through March 26, 2005, as alleged in the information. It was beyond dispute that M.E. had been visiting Huntley in Kansas City over spring break. Moreover, all five of the defense witnesses testified that both children were at the Huntley home during the week in question. In sum, there was sufficient evidence to support that the abuse occurred in the time frame specified by the information. In any event, the State is not required to prove the time of an alleged crime unless it is an essential element of the crime. *State v. Myatt*, 237 Kan. 17, 28, 697 P.2d 836 (1985). Time is not an essential element of rape. See K.S.A. 21-3502(a)(2); K.S.A. 21-3506.

Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational factfinder could have found the defendant guilty beyond a reasonable doubt of all six convictions of rape in contravention of K.S.A. 21-3502(a)(2).

### *Did the District Court Abuse Its Discretion in Denying Huntley a Continuance to Retain an Expert on Child Witness Concerns?*

Huntley argues the district court abused its discretion in denying him a continuance to retain expert assistance to evaluate and testify about the vocabulary and behaviors of the children's videotaped

interviews. He contends that the denial of a continuance under these circumstances interfered with his constitutional right to present a defense and denied his fundamental right to a fair trial.

A district court's refusal to grant a continuance will not be disturbed on appeal absent a showing of an abuse of discretion. Judicial discretion is abused when the court's action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the district court, then it cannot be said that the district court abused its discretion. *State v. Reed*, 282 Kan. 272, 280, 144 P.3d 677 (2006). An abuse of discretion may be found if the district court's decision goes outside applicable legal standards. *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006).

A district court may abuse its discretion in refusing to grant a requested continuance to the defense where the basis for such continuance is to retain an expert witness whose testimony may be crucial to the defense. *State v. Jones*, 226 Kan. 503, 509, 601 P.2d 1135 (1979). The factors to be considered in determining whether to grant a continuance to secure attendance of a witness include the possible prejudice to the defendant, the diligence or lack thereof disclosed in attempting to secure the attendance of the witness, the materiality and importance of the probable testimony, and the probability of the witness' appearance at a later date if the continuance is granted. *State v. Howard*, 221 Kan. 51, 55, 557 P.2d 1280 (1976).

"When a criminal defendant claims that a district judge has interfered with his or her constitutional right to present a defense, we review the issue de novo. [Citation omitted.]" *State v. Carter*, 284 Kan. 312, 318-19, 160 P.3d 457 (2007). Not every unfavorable evidentiary ruling, however, amounts to an interference with a defendant's constitutional right to present a defense. See *State v. McIntosh*, 30 Kan. App. 2d 504, 506, 43 P.3d 837, *aff'd* 274 Kan. 939, 58 P.3d 716 (2002).

"A defendant is entitled to present his or her theory of defense. The exclusion of relevant, admissible, and noncumulative evidence, which is an integral part of the theory of defense, violates the defendant's fundamental right to a fair trial. However, the defendant's right to present a defense is limited by the statutory

rules of evidence and the case law interpreting those rules. [Citation omitted.]" *State v. Baker*, 281 Kan. 997, 1008, 135 P.3d 1098 (2006).

Because the district court denied the continuance on two stated grounds, we must review each to determine whether there was any abuse of discretion.

### Basis 1: The district court's predilection that any expert testimony would be inadmissible

With regard to the district court's stated ground for denying the continuance because the expert assistance or testimony would be inadmissible because such matters are things "jurors normally know" or "are common sense" and would be inadmissible, we respectfully disagree. We note at the outset of our analysis that there was no physical evidence here; the reliability of the child witness was a critical aspect of the case. At least one—if not the predominant—theme of the defense was that M.E.'s natural mother may have been instrumental in suggesting testimony to M.E. Thus, the defense sought expert assistance "to view there [*sic*] videotapes, and analyze the testimony of these children."

In *Mullins v. State*, 30 Kan. App. 2d 711, 46 P.3d 1222, *rev. denied* 274 Kan. 1113 (2002), this court held that the defendant's attorney rendered ineffective assistance of counsel when he failed to consult or hire an expert in child interview techniques. "Had trial counsel procured the services of an available expert regarding proper interview techniques, the jury would have been presented with relatively strong evidence to potentially undermine the allegation of abuse." 30 Kan. App. 2d at 717.

While *Mullins* notes the significance and importance of such testimony, the court's opinion does not address the admissibility of testimony concerning interview techniques in child abuse cases. The holding implies, however, that the services of an expert in this general area may indeed be critical to the defense in such cases, and in so holding infers that such testimony should be admissible. See also other unpublished opinions of this court that are consistent with the implication of *Mullins*, including *State v. Kastl*, No. 83,785, unpublished opinion filed August 11, 2000 (there is a trend toward allowing such evidence), and *State v. Olga*, No. 93,464,

unpublished opinion filed July 21, 2006 (concurring opinion of Greene, J., noting that "most of our unpublished caselaw concludes that experts should have broad latitude in this area").

In *State v. Criqui*, No. 88,388, unpublished opinion September 12, 2003, this court held that the district court erred in excluding such expert testimony as to:

"(1) the proper and improper interviewing procedures and techniques to be used in child sexual abuse cases; (2) how certain procedures and techniques could adversely affect the reliability and accuracy of a child's statements; and (3) the problems that she perceived with the interviewing techniques used in this case." *Criqui*, slip op. at 5.

In so holding, the court quoted with approval from or cited generally to caselaw from other jurisdictions holding that the proper protocols and techniques used to interview child victim witnesses is a matter *not* within the knowledge and understanding of the average juror. See *United States v. Rouse*, 111 F.3d 561 (8th Cir. 1997); *Barlow v. State*, 270 Ga. 54, 507 S.E.2d 416 (1998); *Commonwealth v. LeFave*, 430 Mass. 169, 714 N.E.2d 805 (1999); *State v. Weaver*, 290 Mont. 58, 964 P.2d 713 (1998); *State v. Sloan*, 912 S.W.2d 592 (Mo. App. 1995); *State v. Sargent*, 144 N.H. 103, 738 A.2d 351 (1999). This caselaw seems to be in step with an emerging trend to recognize and permit expert testimony on the impact of suggestive interviewing techniques on child witnesses. See, *e.g.*, 3 Graham, *Commentary on Rule 702: Testimony by Experts*, Handbook of Fed. Evid. § 702:6 (6th ed. 2006); Martindale, *On the Importance of Suggestibility Research in Assessing the Credibility of Children's Testimony*, 38 Court Review 8 (Fall 2001); Ceci and Friedman, *The Suggestibility of Children: Scientific Research and Legal Implications*, 86 Cornell L. Rev. 33 (November 2000).

Additionally, we note and agree with Huntley's contention that the determination of inadmissibility was indeed premature. The expert had not yet been secured, and the scope of his or her testimony could not yet be established.

In denying the continuance, the district court referenced and relied upon its understanding of "the law in Kansas at this point in time." Clearly, much of the Kansas caselaw discussed above is from unpublished opinions that were fairly recent at the time of Hunt-

ley's trial. Nevertheless, we believe the *Mullins* opinion made it clear that our court believed such testimony could be critical to the defense in such cases. Especially where, as here, the defense was heavily dependent on casting doubt on the reliability of child witnesses, we deem an expert in such matters to be of utmost importance and, when denied, likely prejudicial.

A district court necessarily abuses its discretion when it makes an error of law. Under the abuse of discretion standard, an appellate court reviews whether the district court's discretion was guided by erroneous legal conclusions. *State v. Gary*, 282 Kan. 232, 236, 144 P.3d 634 (2006). Here, we conclude that the court was guided by the erroneous legal conclusion that *any* such testimony from an expert in these areas would not be admissible. Based upon the authorities cited above, we conclude it was outside applicable legal standards for the district court to deny a continuance on the ground that such testimony was likely inadmissible.

### *Basis 2: The district court's concern over trial scheduling*

With regard to the district court's second ground for denying a continuance, we note that the district court expressed no concern over the timing of the motion or any lack of diligence by the defense, but rather expressed concern for rescheduling the trial. At the outset, we note that Huntley's attorney advised the district court that Huntley was willing to waive his right to a speedy trial; moreover, any continuance for this purpose was chargeable to Huntley in any event. Against this factual background, we apply the *Howard* factors. See *State v. Howard*, 221 Kan. 51, 557 P.2d 1280 (1976).

With regard to the potential delay in obtaining an expert witness, we are not convinced that there was any lack of diligence by the defense. Huntley was charged on April 28, 2005, and the court appointed counsel on May 4, 2005. A preliminary hearing was held in August 2005, and the court-appointed counsel withdrew in early September 2005. Huntley's trial attorney was appointed on September 9, 2005, only 2 months before trial. The preliminary hearing transcript was provided 1 month before trial. Huntley's trial

attorney requested the videotaped interviews soon after being appointed, but received them only 2 weeks before trial. He then studied the tapes and conferred with Huntley about an expert and "before [he] knew it, [their] backs were against the wall on trial dates." Although the motion to continue was put on record on the morning of trial, Huntley's attorney had approached the district judge the week before trial about a possible continuance. Moreover, Huntley's attorney also explained that he would have to apply to the Board of Indigents' Defense Services for money to hire an expert. This is not what we consider a lack of diligence by the defense.

We do not view the district court's concern over rescheduling to be an appropriate weighing of the *Howard* factors. Clearly, Huntley was willing to pay the price of staying in custody until another trial date, as acknowledged by his counsel. As we have noted, there is no credible suggestion that the defense had been less than diligent in considering and attempting to secure such a witness, and there was no discussion regarding the probability of the witness' likely appearance at a later trial. Weighing these factors against the potential importance of the witness and the possible prejudice to the defense, we fail to understand the court's concern over rescheduling.

Most importantly, however, is that the judge's second ground seems to have circled back to the first ground in stating he "probably would not let [an expert] testify." As we have already indicated, this premature statement as to admissibility was an erroneous legal conclusion. The importance of the witness and the prejudicial impact on the defense of proceeding in lieu of such witness is critical in the assessment of a motion for continuance.

We conclude that the district court abused its discretion in refusing to grant a continuance under these circumstances. See *United States v. Ellis*, 2008 WL 341711 (4th Cir. 2008) (unpublished opinion) (district court abused discretion in denying continuance to obtain expert where expert significant to defense and no prejudice shown). For that reason we must reverse the convictions and remand for new trial.

### *Did the District Court Err In Admitting Testimony About a Gift of a Nightgown to the Female Victim?*

Although we have already determined that a new trial is necessary, we address this evidentiary issue for the purpose of assisting the district court on remand. Huntley argues that testimony about a nightgown that he allegedly bought for M.E. was too remote in time to be admissible and that there was no logical connection between the nightgown and the alleged acts of sexual abuse. We agree.

When reviewing a district court's decision to admit evidence, an appellate court first determines whether the evidence is relevant. Once relevance is established, an appellate court must apply the evidentiary rules governing the admission and exclusion of evidence as a matter of law or in the exercise of the district court's discretion, depending on the contours of the evidentiary rule in question. *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006); see K.S.A. 60-407(f). Unless otherwise prohibited, all relevant evidence is admissible. K.S.A. 60-407(f).

"Evidence is relevant if it has any tendency in reason to prove any material fact. K.S.A. 60-401(b). To establish relevance, there must be some material or logical connection between the asserted facts and the inference or result they are intended to establish. [Citation omitted.]" *Gunby*, 282 Kan. at 47. " ' "Determining whether evidence is too remote to be admissible rests within the sound discretion of the trial court. Mere lapse of time alone is not sufficient to deprive evidence of its probative value, but goes to the weight of the evidence to be considered by the jury." [Citations omitted.]' " *State v. Walters*, 284 Kan. 1, 14, 159 P.3d 174 (2007). In order to preserve the issue for appeal, a party must make a timely and specific objection. K.S.A. 60-404; *State v. Anthony*, 282 Kan. 201, 206, 145 P.3d 1 (2006).

Prior to trial, the State moved to endorse Vicki Atwood, M.E.'s kindergarten teacher, as a witness. The State advised the district court that Atwood would be testifying that M.E. told the kindergarten class that Huntley bought M.E. a nightgown. The State also advised the district court that M.E. could testify that she wore the

nightgown during some of the alleged acts of abuse. Huntley objected on the grounds that the testimony about the nightgown was too remote, not relevant, and more prejudicial than probative. No objection was reasserted at trial. The district court allowed Atwood to testify fully regarding the nightgown.

At trial, Atwood testified that the kindergarten class had a story telling time called the "author's chair" in which each student would tell something about themselves or their families. Atwood testified that sometime around Christmas, M.E. told the class that "she had got a new nightgown, and that it was a special nightgown given to her by her daddy, and she wore it at her daddy's place." Atwood testified that she later became aware of sexual abuse allegations involving M.E. On cross-examination, Atwood testified that M.E. did not describe the nightgown as "out of the ordinary." The State did not ask M.E. any questions about the nightgown. Huntley elicited testimony from M.E. that she did not remember who bought her the nightgown, but that it was in a bag of clothes and that she liked the nightgown.

Regardless of whether the testimony that Huntley bought M.E. a nightgown several months prior to the abuse was too remote, the evidence was not relevant to prove that Huntley sexually abused M.E. There is no logical or material connection between the asserted fact that Huntley bought M.E. a nightgown sometime around Christmas and the intended inference that Huntley raped or sodomized M.E. in March. We conclude this evidence had no relevance and should not be admitted on remand.

### Summary and Conclusion

In summary, we have concluded that Huntley's convictions must be reversed due to the district court's abuse of discretion in denying a continuance for the purpose of retaining an expert on child witnesses. On remand, Huntley is entitled to a new trial. He must be permitted to retain the services of an expert in the area of child witnesses and their suggestibility. The evidence regarding the gift of a nightgown to the female victim should not be admitted.

We regret the need for a new trial under these circumstances. We realize that trials of such matters are undoubtedly traumatic

for child victims and witnesses, but Huntley is entitled to a fair trial as a predicate to receiving a sentence for 30 years' imprisonment.

Reversed and remanded with directions.