NOT DESIGNATED FOR PUBLICATION

No. 123,659

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILLIAM KYLE BEMIS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; FAITH A.J. MAUGHAN, judge. Opinion filed January 7, 2022. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ATCHESON, J., and RICHARD B. WALKER, S.J.

PER CURIAM: William Kyle Bemis was convicted by a jury of aggravated indecent liberties with a child, indecent liberties with a child, violation of a protective order, and electronic solicitation. His convictions were affirmed on direct appeal. Bemis later filed a K.S.A. 60-1507 motion alleging ineffective assistance of counsel on several grounds. The district court summarily denied his motion. This is Bemis' appeal of the summary denial of his K.S.A. 60-1507 motion. Because we find no error in the district court's decision, we affirm.

1

In late 2015 and early 2016, the State charged Bemis with aggravated indecent liberties with a child, indecent liberties with a child, violation of a protective order, electronic solicitation, and aggravated intimidation of a witness. These charges stemmed from a relationship between Bemis and his stepdaughter C.K., who was 14 and 15 years old when the crimes occurred.

*Evidence presented at trial*

Since the evidence of Bemis' crimes is graphic and was set out in detail in the decision rendered by a panel of this court on his direct appeal, we will provide only a shorter synopsis in this decision. At trial the State called C.K.; her parents, Mother and Father; her maternal Grandmother; several Wichita police officers; and a social worker who evaluated Mother following the incident. The evidence presented stemmed exclusively from statements C.K. made to others about her relationship with Bemis and incriminating text messages between C.K. and Bemis.

In December 2015, Wichita police were called to a domestic disturbance between Mother and Father. C.K. told an officer that the disturbance occurred because Father had just learned about her inappropriate relationship with Bemis and was removing her from the home. Mother learned about the relationship months prior and told Grandmother. Grandmother decided to tell Father finally about the possible relationship. Grandmother and Father testified that C.K. did not outright tell them about what Bemis had done to her, but C.K. did not deny there was a relationship, and she was emotional when they confronted her about it.

C.K. told the responding officer that Bemis had been touching her sexually for several months. When the officer learned it was a child sexual abuse investigation, he

stopped investigating so that trained detectives from the Wichita Police Department's Exploited and Missing Child Unit (EMCU) could take over.

In follow-up interviews with an EMCU detective, C.K. said that there were approximately 30 sexual encounters between her and Bemis between June 2015 and September 2015. A week after filing the police report, C.K. recanted and told the EMCU detective that nothing happened between Bemis and herself. Since the first interviews, C.K. has consistently maintained that she made the allegations up to get out of the house because of issues between Bemis and Mother, and she testified accordingly at trial.

The EMCU detective recovered deleted text messages between C.K. and Bemis from C.K.'s cell phone, Bemis' cell phone, and a second cell phone that Mother and Bemis provided to C.K. during the investigation. The detective found several incriminating text messages which were read into the record and entered into evidence. Several of the text messages were related to the charge of aggravated intimidation of a victim, which Bemis was acquitted of by the jury.

The relevant text messages included statements from C.K. to Bemis such as: "'I'm going to try to keep you out of prison, but you need to promise that you will not do this to any other girl ever again,'" and "'[Grandmother] was under the impression that you and I had sex . . . . and I told her that it was only touching.'"

Texts from Bemis to C.K. revealed statements that "'I remember waking up and having a delicious breakfast of [C.K.] in the morning,'" and "'You must have a spell on me. I just couldn't leave you alone, had to be close to you.'" When C.K. suggested it was a "love spell," Bemis replied: "'Sneaky.' 'A love spell. Must be. Well, it works. I love you so much.' 'Can't get you out of my thoughts.'"

When questioned about the text messages at trial, C.K. provided innocent explanations for the incriminating texts. She said that when she texted him: "'[P]romise that you will not do this to any other girl ever again,'" she was referring to his relationship with Mother. C.K. said she explained to the EMCU detective that the text about "waking up and having a delicious breakfast of [C.K.]'" was a metaphor because she and Bemis would spend a lot of time together in the mornings, but she did not remember the text. C.K. also testified that Mother had used her and Bemis' phones before pretending to be them and she cannot tell when she is speaking with Bemis or Mother. Mother testified that she often used Bemis' phone to text C.K.

The State also presented evidence of Bemis' prior conviction for attempted aggravated indecent liberties with a child committed against his stepdaughter from a previous marriage when she was between 9 and 13 years old.

The defense did not present any evidence. Bemis' defense was that there was no inappropriate relationship between Bemis and C.K. and that C.K. was being truthful when she said she made it all up to get out of the house. Bemis claimed there were problems in C.K.'s home life, so she made up the allegations against Bemis. And as soon as she realized what the consequences were, she came forward with the truth. The defense also argued that none of the text messages showed there was sexual contact between Bemis and C.K.

The jury ultimately found Bemis guilty of aggravated indecent liberties with a child, indecent liberties with a child, violation of a protective order, and electronic solicitation. He was acquitted of aggravated intimidation of a witness.

*Direct appeal*

Bemis appealed his conviction to the Court of Appeals, arguing: (1) The statute that provided for the admission of his prior sex offense was unconstitutional; (2) there was insufficient evidence to support his electronic solicitation conviction; (3) the jury instruction defining indecent liberties with a child created alternative means of committing the crime and the State failed to present evidence in support of the alternative means; and (4) his constitutional rights were violated when the court increased his sentence based on criminal history but did not require the State to prove it to a jury. The panel denied all of Bemis' claims and affirmed his convictions. *State v. Bemis*, No. 118,357, 2019 WL 4230510 (Kan. App. 2019) (unpublished opinion), *rev. denied* 311 Kan. 1046 (2020).

*Bemis' K.S.A. 60-1507 motion*

Bemis filed a pro se K.S.A. 60-1507 motion arguing ineffective assistance of counsel. Bemis said his trial counsel was ineffective when he (1) failed to consult with an expert on forensic interviews or call such an expert to testify at jury trial and (2) failed to investigate the State's witnesses or the witnesses Bemis provided him with to assist with his defense.

Bemis alleged that his trial counsel did not do any investigation into the EMCU detective's interview techniques and that the credibility of C.K.'s statements to the detective was central to the case, since C.K. recanted her allegations. Bemis said his counsel should have hired an expert on proper interview techniques to show that C.K.'s in-court statements were more credible than the statement she gave to the detective.

Bemis compares his case to *Mullins v. State*, 30 Kan. App. 2d 711, 46 P.3d 1222 (2002), in which another panel of our court held that trial counsel was deficient for not

5

consulting an expert on forensic investigation when a conviction for sex crimes against a child was based solely on the victim's testimony. Bemis argued his case was similarly bereft of physical evidence or corroborating eyewitness testimony.

Additionally, Bemis contends that his trial counsel was ineffective for failing to contact or call several co-workers who witnessed his interactions with C.K. and Mother at different times. Bemis argued that his counsel was also ineffective for failing to contact his friend Todd Ellison and for failing to investigate C.K. Bemis attached a sworn written statement from Ellison to his K.S.A. 60-1507 motion which said Ellison lived with Bemis from June 27, 2015, to August 6, 2015—a 41-day period which was a portion of the time during which Bemis was alleged to have committed his crimes—and that C.K. did not live there during that time. Bemis argued that if his counsel had contacted Ellison and investigated C.K. he would have learned that C.K. was not living at Bemis' house for over half of the timeline the State alleged, which would have assisted with his defense.

In the State's response to Bemis' K.S.A. 60-1507 motion, the State argued that Bemis' counsel was not ineffective for failing to consult an expert in forensic examination because Bemis asserted an expert would testify why C.K.'s trial testimony was more credible than her interview with the EMCU detective and it is improper for a witness to comment on the credibility of another witness. The State said it was Bemis' counsel's province to decide what witnesses to call after investigating the case. The State also noted that even if Bemis' counsel called an expert at trial, the court likely would have ruled the testimony was inadmissible.

The State countered that Bemis' argument that his counsel should have contacted Ellison did not warrant an evidentiary hearing because the period that Ellison lived with Bemis only covered part of the timeframe the State alleged, greatly reducing its importance. The aggravated indecent liberties count was charged as occurring between June 1, 2015, and June 30, 2015; Ellison did not move in until June 27. The indecent

liberties count was charged as occurring between June 1, 2015, and September 27, 2015; Ellison moved out by August 6. The State argued that even if these witnesses had been called to testify, there was no reasonable probability they would have affected the outcome of the trial because there was overwhelming evidence against Bemis.

The district court found that the appointment of counsel and an evidentiary hearing was unnecessary because the records and motion established that Bemis was not entitled to relief. The district court found that Bemis was represented by competent counsel whose representation did not fall below the standard of reasonableness and that Bemis failed to establish that, but for his counsel's performance, there was a reasonable probability the outcome of the proceedings would have been more favorable.

One week after the district court denied Bemis' K.S.A. 60-1507 motion, he filed a reply to the State's response. Bemis responded to the State's assertion that expert testimony would have been inadmissible, citing a string of Kansas cases saying it is proper for courts to admit expert testimony on the interviewing techniques to be used in child sexual abuse cases and how they could affect the reliability of a child's statement.

Bemis also responded to the State's assertion that his attorney was not ineffective for failing to contact Ellison because his statement was unimportant. Bemis said that if his trial counsel would have contacted Ellison or looked into C.K.'s whereabouts he would have uncovered that she spent most of the summer living at Father's house. Bemis concludes that this would have shown that no crimes could have been committed between June 1, 2015, and August 6, 2015, and raised doubts about the allegation he committed crimes in September.

Bemis also filed a motion to reconsider the denial of his K.S.A. 60-1507 motion because the district court denied his motion before it received his reply to the State's response. In the motion to reconsider Bemis requested the district court appoint him an

7

attorney and likened his case to *Chubb v. State*, No. 99,912, 2009 WL 929136 (Kan. App. 2009) (unpublished opinion), in which the court found that Chubb was entitled to an evidentiary hearing to show that his attorney was ineffective for failing to obtain an expert on child-witness interviews.

After reviewing Bemis' reply, the district court denied the motion to reconsider. Bemis timely appeals the summary denial of his K.S.A 60-1507 motion.

ANALYSIS

On appeal, Bemis argues that the district court erred by denying his K.S.A. 60-1507 motion without providing him an evidentiary hearing to show that his trial counsel was ineffective. He argues his trial counsel was ineffective for (1) failing to consult an expert on forensic interviews, (2) failing to interview a favorable defense witness, Ellison, and (3) failing to investigate the victim, C.K.

*Standard of Review*

A district court has three options when handling a K.S.A. 60-1507 motion: (1) determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and summarily deny the motion; (2) determine from the motion, files, and records that a potentially substantial issue exists, hold a preliminary hearing, and deny the motion if there is no substantial issue; and (3) determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full evidentiary hearing. *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

When the district court summarily dismisses a K.S.A. 60-1507 motion, we conduct a de novo review to determine whether the motion, files, and records of the case

8

conclusively establish that the movant is not entitled to relief. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018).

To avoid summary denial of a K.S.A. 60-1507 motion, a movant has the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing; the movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims, or an evidentiary basis must appear in the record. In stating the evidentiary basis, the motion must set forth a factual background, names of witnesses, or other sources of evidence to demonstrate that the movant is entitled to relief. *Swenson v. State*, 284 Kan. 931, Syl. ¶ 2, 169 P.3d 298 (2007). In deciding whether an evidentiary hearing must be held, the court generally must accept the factual allegations in the motion as true. See *Hogue v. Bruce*, 279 Kan. 848, Syl. ¶ 1, 113 P.3d 234 (2005). The district court must grant an evidentiary hearing when the motion sets forth facts that, if true, would entitle Bemis to relief. *Swenson*, 284 Kan. 931, Syl. ¶ 3.

*Ineffective assistance of counsel*

Bemis argues the district court erred by finding that the motions, files, and records conclusively showed that he was not entitled to relief for ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish (1) that defense counsel's performance was deficient under the totality of the circumstances, and (2) prejudice, i.e., there is a reasonable probability that the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 871, 882, 335 P.3d 1162 (2014).

9

*Failure to consult an expert on forensic interviews*

Bemis first argues that his counsel was deficient for failing to consult an expert on forensic interviews. Bemis relies on *Mullins*, 30 Kan. App. 2d 711. In *Mullins* another panel of our court found that defense counsel was ineffective for failing to consult an expert on interviewing techniques when the conviction was based solely on the child victim's testimony, and had counsel called an expert, the jury would have heard strong evidence to potentially undermine the allegations of abuse.

Bemis argues his case is like *Mullins* because he was convicted of indecent liberties and aggravated indecent liberties with a child solely based on the incriminating statements C.K. made to officers. The case had no eyewitnesses or physical evidence. As a result, Bemis argues, officers' training and interviewing techniques could have helped extract false allegations from C.K., especially considering she later recanted all allegations against Bemis.

Bemis argues that the State misstated his argument in its response by saying that he wanted an expert to testify that C.K.'s in-court statements were more credible than her initial allegations. Bemis says he wanted to consult with an expert to determine whether the techniques used to interview C.K. could have caused her to make false allegations.

Bemis argues he was prejudiced by his counsel's failure to consult an expert on interview techniques because *Mullins* makes it imperative to consult an expert when the State will mainly rely on the testimony of a child victim and factors call into question the reliability of such testimony. Bemis says expert witnesses could have provided testimony that caused jurors to doubt C.K.'s initial allegations because they were extracted by law enforcement through poor interviewing techniques. But he says this cannot be known because he was denied an evidentiary hearing.

The State notes that *Mullins* limited its holdings to the facts of the case, and Kansas courts have frequently declined to extend the holding. The State argues that this case is different than *Mullins* because (1) the victim in that case was a small child while C.K. was 14 or 15 years old when the abuse occurred and had no difficulty expressing her thoughts when testifying, and (2) consulting with an expert about C.K.'s interview was unnecessary because she recanted and explained why she made the allegations against Bemis. The State notes that the crux of Bemis' defense was that the crimes never occurred and C.K. made them up to get out of the house. Thus, the State contends, the interviewing technique was not responsible for C.K.'s allegations against Bemis. The State argues it was defense counsel's strategy to reinforce C.K.'s recantation, emphasize why she made the allegations, and highlight that there was no physical evidence.

The State also argues that Bemis has failed to show he was prejudiced by the failure to consult an expert. The State says that there was strong evidence presented at trial, namely: C.K. disclosed sexual abuse to Mother, Grandmother, Father, and two law enforcement officers before she recanted, and there were numerous text messages between C.K. and Bemis indicating a sexual relationship and C.K.'s reluctance to get Bemis in trouble.

In his reply brief, Bemis argues that 15-year-old children can be influenced into making false allegations, and the fact that C.K. made allegations to her family members before being interviewed by police does not mean the interview techniques were not tainted or did not lead her into making additional false allegations.

Bemis relies on *Mullins* for the proposition that his counsel was ineffective for failing to consult an expert. In that case Mullins was given an evidentiary hearing on his K.S.A. 60-1507 motion at which he presented uncontroverted testimony from an expert that there were issues with the child victim's interview and from a defense attorney that it was common knowledge among defense attorneys that there is no valid strategy for

failing to use an expert in that type of case. Mullins' attorney also testified that he had no experience in sexual abuse cases and did not look into the possibility of hiring an expert even though he had concerns about the interview.

The *Mullins* court noted that the decision of whether to call certain witnesses is a matter of trial strategy, but the court found that defense counsel cannot make a strategic decision against pursuing a line of investigation when he or she has not yet obtained facts upon which that decision could be made. 30 Kan. App. 2d at 716-17.

Ultimately the district court found that Mullins' counsel's performance was objectively unreasonable, highlighting these facts: (1) Mullins was convicted primarily based on the testimony of the victim, (2) the victim's physical exam showed no signs of abuse, and (3) there was no expert to rebut the testimony of the nurse and victim. 30 Kan. App. 2d at 712.

The *Mullins* court made clear that its holding was limited to the facts of that case, and Kansas courts have generally declined to extend the holding. See *Hall v. State*, No. 109,168, 2014 WL 1096748 (Kan. App. 2014) (unpublished opinion) (declining to extend *Mullins* under facts presented); *Westerman v. State*, No. 94,627, 2006 WL 2440003 (Kan. App. 2006) (unpublished opinion); *Snavely v. State*, No. 89,156, 2003 WL 22430275 (Kan. App. 2003) (unpublished opinion). In these cases, the panels generally found that there was sufficient evidence other than the victim's testimony or that trial counsel was experienced in sexual abuse cases and sufficiently considered whether to consult an expert.

In *Chubb v. State*, 2009 WL 929136, another panel of this court determined that the defendant was entitled to an evidentiary hearing when he argued that his attorney failed to obtain an expert on child interviews. Chubb was convicted based on the testimony of three children who said he sexually abused them and his statement that he

could not remember because he was using cocaine heavily during that time. Chubb relied on *Mullins* and *State v. Huntley*, 39 Kan. App. 2d 180, 177 P.3d 1001 (2008), in which the Court of Appeals held that testimony from an expert on child-witness interviewing techniques could be critical to the defense in cases where the defense was heavily reliant on casting doubt upon the reliability of child witnesses. The court found that Chubb may have a good argument based on *Mullins* and *Huntley* and that he should have an opportunity to develop and support his argument with evidence. *Chubb*, 2009 WL 929136, at *3.

Bemis has had no evidentiary hearing to present evidence from an expert whether improper interview techniques caused C.K. to make false allegations, or determine whether his trial counsel was experienced in sexual abuse cases or made an informed decision not to consult an expert on the matter, because the district court summarily denied his motion. He was convicted primarily on the allegations that C.K. made to law enforcement before recanting and text messages that indicated an inappropriate relationship. The State argues that C.K. made allegations of sexual abuse to Mother, Grandmother, and Father. But none of them could elaborate on what C.K. told them happened. The testimony from her family members is that C.K. said, "'Yeah . . . something's going on'" to Mother and reacted tearfully when Grandmother told Father that C.K. was in a sexual relationship with Bemis, but that they did not go into details.

The only witnesses who testified that C.K. said Bemis touched her sexually were the officer who responded to the domestic disturbance between her parents and the EMCU detective that interviewed her later. C.K. later recanted her allegations against Bemis and said she only made those statements to get out of Bemis' house.

But the jury heard C.K.'s testimony that she lied about Bemis having sexual contact with her and still convicted him. Bemis provides no factual basis to lead us to believe that the EMCU detective's interviewing techniques were improper in some way

13

that might have misled the jury. Likewise he provides no information concerning any witness or witnesses who might call the detective's interactions with C.K. into question. In short, Bemis' bare allegation that his defense lawyer should have called a witness about child-witness interviewing procedures falls under the category of a "conclusory contention" which *Swenson* and similar cases hold do not automatically entitle him to an evidentiary hearing before the district court.

Any information from an expert witness that the interview techniques used were improper might have helped challenge the reliability of C.K.'s allegations. But C.K.'s initial allegations were already vigorously challenged by the defense by highlighting that she recanted. Perhaps the jury would have found it compelling that law enforcement got C.K.'s initial allegations through improper techniques. But C.K.'s recantation was likely not so compelling given the text messages between her, Bemis, and Mother indicating that she was trying to protect Bemis and was being pressured to lie by Mother.

C.K. was not a young child. She was 14 and 15 years old at the time of the abuse and nearly 17 years old when she testified at trial. The child victims in *Mullins* and *Chubb* were between 6 and 10 years old when their abuse occurred. *State v. Mullins*, 267 Kan. 84, 85-86, 977 P.2d 931 (1999); *Chubb*, 2009 WL 929136, at *1. In several cases our courts have found the argument about the need for an expert on forensic interviews less persuasive when the victims are older children. See *Dull v. State*, No. 118,825, 2019 WL 406643, at *5 (Kan. App. 2019) (unpublished opinion) (finding defense counsel's decision not to consult expert was reasonable based on experience; victim was 13 years old and had no problem expressing her thoughts); *Hall*, 2014 WL 1096748, at *8 (finding defendant's argument that defense counsel was required to consult expert on interview techniques was not persuasive because victims were teenagers); *State v. Genton*, No. 102,085, 2011 WL 1877696, at 3 (Kan. App. 2011) (unpublished opinion) (denial of continuance to obtain expert to cast doubt on reliability of child witness was not as

14

important as in *Huntley* because victims were 13 and 15 and had better developed speech and memory).

The record before us shows that even if Bemis' counsel was deficient for failing to contact an expert on interview techniques, Bemis likely cannot show that he was prejudiced by the deficiency because (1) C.K. herself testified that she lied about the allegations but the jury chose to convict anyway, (2) C.K. was a teenager throughout the investigation and trial and was not susceptible to being led by investigators, and (3) the jury saw the incriminating text messages indicating that Bemis and C.K. were in an inappropriate relationship. Based on these facts, the district court did not err by denying Bemis' K.S.A. 60-1507 motion without an evidentiary hearing on these grounds.

*Failure to contact a defense witness and investigate C.K.*

Bemis next argues his trial counsel was deficient for failing to contact Ellison, a favorable defense witness. Bemis complains that he asked his trial counsel to contact Ellison, but his counsel never did. Bemis says Ellison's testimony that he lived with Bemis for a portion of the timeframe the State alleged he committed the crimes could have been favorable to Bemis at trial. Bemis says his counsel's failure to contact Ellison was unreasonable because Ellison's testimony that C.K. did not live with Bemis would have shown Bemis' innocence for many dates alleged.

Bemis also alleges his trial counsel was ineffective for failing to investigate C.K. He says trial counsel would have discovered that C.K. did not live with Bemis in Wichita for well over half of the timeline alleged by the State. He says this evidence would have been significant given that the EMCU detective testified that C.K. told him she and Bemis had 30 sexual encounters between June and September 2015. Bemis could have argued that there was not time to have 30 sexual encounters because C.K. lived out of town with Father all summer. Bemis said his counsel's performance was deficient

15

because if he would have investigated C.K., he could have discovered more evidence of Bemis' innocence for many of the dates alleged.

The State argues that the decision on what witnesses to call was within the exclusive province of Bemis' counsel. The State contends that Ellison's testimony is not as relevant as Bemis asserts because it only covers a portion of the timeframe of the crimes and does not prove Bemis' innocence. The State notes that while evidence that C.K. lived elsewhere during the summer of 2015 might have reinforced her testimony that nothing occurred between her and Bemis, it would not have negated the text message evidence, which indicated that they were in a sexual relationship during that period.

To prove ineffective assistance of counsel, Bemis first must show that his counsel's performance was deficient under the totality of the circumstances. *Sola-Morales*, 300 Kan. at 882. Bemis' argument involves his counsel's decision not to contact a potential witness and investigate the victim.

"'[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *State v. Adams*, 311 Kan. 569, 579, 465 P.3d 176 (2020) (citing *State v. Orr*, 262 Kan. 312, 327, 940 P.2d 42 [1997]).

Bemis has failed to show that his counsel was deficient for not contacting Ellison or that he was entitled to an evidentiary hearing on this issue. Bemis attached Ellison's sworn statement to his K.S.A. 60-1507 motion, which provided only that Ellison lived at Bemis' home for a portion of the timeframe Bemis was alleged to have committed the crimes. Ellison's presence at the home may have narrowed down the timeline but would not have proven Bemis' innocence or made it less likely that he sexually abused C.K. at

16

some point during the summer of 2015. Therefore, it was not unreasonable for Bemis' counsel not to contact Ellison or have him testify at trial.

Bemis' argument that his counsel was ineffective for failing to investigate C.K.'s whereabouts during the summer of 2015 may have had more merit than his previous argument if he alleged that C.K. stayed with Father during the entire summer, as the district court must accept the factual allegations as true. If this was Bemis' allegation, it could have been deficient for his attorney to not investigate C.K. because he could have presented evidence that, not only did C.K. lie about having sexual contact with Bemis, she could not have had sexual contact with him during the timeframe the State alleged because she was not there.

But Bemis alleged only that C.K. stayed with Father most of the summer, which made it unlikely that she could have had sexual contact with Bemis 30 times during the alleged timeframe. Any evidence Bemis' attorney would have uncovered would have been used to challenge the reliability of C.K.'s allegation that they had contact 30 times. The defense already presented evidence on the reliability of C.K.'s allegations, namely her recantation, and the jury still found her initial allegations credible.

We cannot determine from the record why Bemis' counsel did not investigate C.K. or whether it was a matter of trial strategy because there was no evidentiary hearing. But Bemis' counsel could have reasonably determined it was unnecessary to investigate C.K.'s whereabouts because the defense strategy was to focus on the fact that C.K. recanted the allegations and that C.K. and her mother both testified that nothing ever happened between her and Bemis. Since Bemis' position at trial was "it never happened," his counsel reasonably could have found it was not necessary or helpful to hash out whether Bemis and C.K. could have had sexual contact 30 times during the period the State alleged. In fact, the State only charged one count of indecent liberties with a child and one count of aggravated indecent liberties with a child in that time period, not 30

17

separate incidents, which would make the 41-day period even less critical. Therefore, the records and motion conclusively show that Bemis' counsel was not deficient for failing to contact Ellison or investigate C.K. and an evidentiary hearing was not required for these issues.

A defendant is prejudiced by counsel's deficient performance when there is a reasonable probability that the jury would have reached a different result absent the deficient performance. *Sola-Morales*, 300 Kan. at 882.

Bemis argues that he was prejudiced by his counsel's failure to contact Ellison and investigate C.K. because investigation would reveal C.K.'s claim of 30 sexual encounters was unlikely, making her initial allegations even less credible, coupled with the fact that she later recanted the allegations. The State says that even if Bemis' counsel called Ellison and an expert on forensic interviews to testify, the outcome of the trial would not have been different.

Even if Bemis' counsel's performance was deficient for failing to contact Ellison and investigate C.K., Bemis was not prejudiced by these deficiencies because there is no reasonable probability that evidence would have affected the jury's verdict. Ellison's testimony that C.K. did not live with Bemis for that month would have narrowed down the timeline, but it would not have proven Bemis' innocence or made it less likely that he sexually abused C.K. at some point during the summer of 2015. Evidence Bemis' attorney would have uncovered about C.K.'s whereabouts would have been used to challenge the reliability of C.K.'s allegations against him. The defense already presented evidence that C.K. recanted, and C.K. and Mother testified that nothing happened between C.K. and Bemis. Despite the recantation, the jury still found her initial allegations credible. In light of the other evidence, the incriminating text messages, C.K.'s initial allegations, and the evidence that C.K. did not want to get Bemis in trouble, there

is no reasonable probability that Ellison's testimony or evidence about C.K.'s summer whereabouts would have affected the jury's verdict.

Because the motion, records, and files show that Bemis was not entitled to relief, the district court did not err by summarily denying Bemis' K.S.A. 60-1507 motion. Bemis is not entitled to an evidentiary hearing or appointment of counsel.

Affirmed.