IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,252

STATE OF KANSAS,
*Appellee*,

v.

TERRY R. BALLOU SR.,
*Appellant*.

SYLLABUS BY THE COURT

1.

A prosecutor's actions or statements fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial when the prosecutor presents an argument to the jury that misstates the law or argues a fact or factual inference with no evidentiary foundation.

2.

Prosecutorial error is harmless if the State can show beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict.

3.

K.S.A. 2018 Supp. 60-456(b) does not provide a basis for excluding a forensic interview of an alleged child sexual abuse victim that does not include opinions or other testimony based on scientific, technical, or other specialized knowledge.

1

**4.**

Expert testimony is not necessarily required as a foundation for introducing a child witness' interview into evidence, and an interviewer need not apply a specific formula or follow a specific protocol when interviewing a child witness.

**5.**

Generally, litigants and their counsel bear the responsibility for objecting to inadequate findings of fact and conclusions of law in order to give the district court the opportunity to correct such inadequacies, and, without any objection, an appellate court will not consider omissions in findings.

**6.**

An appellate court will usually not consider a pretrial objection to have been timely interposed because an in limine ruling is subject to change when the case unfolds. This rule acknowledges that different, more, or less evidence may come in at trial than was admitted or proffered at a pretrial hearing. Or a district court judge may simply see the issue in a different light after hearing additional arguments and evidence. A timely interposed objection, as required by the plain language of K.S.A. 60-404, is one that gives the district court the opportunity to make the ruling contemporaneous with an attempt to introduce evidence at trial.

**7.**

Determining whether a criminal defendant is entitled to an independent psychological evaluation of a witness requires a district court to consider six relevant factors: (1) whether there was corroborating evidence of the complaining witness' version of the facts, (2) whether the complaining witness demonstrates mental instability, (3) whether the complaining witness demonstrates a lack of veracity, (4) whether similar charges by the complaining witness against others are proven to be false, (5) whether the

defendant's motion for a psychological evaluation of the complaining witness appears to be a fishing expedition, and (6) whether the complaining witness provides an unusual response when questioned about his or her understanding of what it means to tell the truth.

8.

An appellate court reviews a district court's application of the factors for determining whether a criminal defendant is entitled to an independent psychological evaluation of a witness and its ultimate decision to grant or deny a motion for a psychological evaluation of a witness for an abuse of discretion. An abuse of discretion occurs if: (1) no reasonable person would take the view adopted by the district court; (2) the decision is based on an error of law; or (3) the decision is based on an error of fact. The party asserting the district court abused its discretion has the burden to show such an abuse of discretion.

9.

A single, nonreversible error does not establish reversible cumulative error.

Review of the judgment of the Court of Appeals in an unpublished opinion filed August 18, 2017. Appeal from Miami District Court; AMY L. HARTH, judge. Opinion filed September 6, 2019. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed in part and vacated in part.

*Peter Maharry*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Elizabeth H. Sweeney-Reeder*, county attorney, argued the cause, and *Julia Leth-Perez*, assistant county attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

3

The opinion of the court was delivered by

LUCKERT, J.: A jury convicted Terry R. Ballou Sr. of one count of rape and one count of aggravated indecent liberties with a child. Ballou appealed, asserting five errors: (1) The prosecutor erred when, in his closing argument, he expanded the time frame in which the crime allegedly occurred; (2) the district court erred in admitting into evidence a video of an interview of the child victim without ensuring compliance with K.S.A. 2018 Supp. 60-456(b) or conducting a taint hearing to determine its reliability; (3) the district court erred by admitting evidence of alleged prior sexual misconduct by Ballou; (4) the district court erred in not ordering a psychological evaluation of the child victim; and (5) the cumulative effect of all errors warrants reversing his convictions. The Court of Appeals rejected Ballou's arguments and affirmed his convictions and sentence. *State v. Ballou*, No. 116,252, 2017 WL 3575610, at *1 (Kan. App. 2017) (unpublished opinion). On review of that decision, we determine no reversible error occurred, and we affirm Ballou's convictions. But we raise sua sponte the issue of whether the district court erred in sentencing Ballou to postrelease supervision and we vacate that portion of the sentence.

FACTS AND PROCEDURAL BACKGROUND

Ballou's convictions of one count of rape and one count of aggravated indecent liberties with a child resulted from acts involving his then-six-year-old daughter. The State originally alleged Ballou committed these crimes on or about April 13, 2014. On or about that date, Ballou's long-time, live-in girlfriend, Virginia Norris, left the house to run a few errands. She returned much sooner than expected to find Ballou rubbing his erect penis on his daughter's vagina and anus while the daughter was face down on a chair in the living room with her pants pulled down.

4

Norris reported what she saw to her mother and her adult daughter, but she did not report the incident to law enforcement authorities. Sometime later, Norris' adult daughter reported the incident to the Kansas Department for Children and Families (DCF). After receiving the report, the DCF began an investigation. Jennifer Stockard, a child protection specialist, contacted Norris about the allegations, but Norris denied knowing anything about the incident.

Stockard and a sheriff's detective contacted Ballou's daughter while she was at her babysitter's house. Based on what the child said, they decided to take her into protective custody and transport her to Safe Harbor, an interview room in the basement of the Miami County courthouse. Stockard had some familiarity with the child because, two years earlier, Stockard had interviewed her while investigating whether her brother had abused her.

After Stockard and the detective decided to take the child to Safe Harbor to continue their 2014 investigation, they contacted Norris. She came to the courthouse and gave them details about an occasion when she came home earlier than expected and found Ballou touching his daughter with his penis. Stockard then interviewed the child. Stockard recorded the interview, which was later introduced at trial over Ballou's objection. In the interview, the child revealed Ballou had penetrated her vagina and anus with his penis before Norris came home and found them. The child also said Ballou had committed the same or similar acts on multiple prior occasions.

Based on the child's allegations, Ballou was arrested and charged with and tried by a jury on the charges of rape, aggravated criminal sodomy, and aggravated indecent liberties with a child. During the trial, the State introduced evidence of the child's reports of other uncharged sex crimes or instances of sexual misconduct. The State offered this evidence under K.S.A. 2018 Supp. 60-455(d) to show Ballou's propensity to commit

5

these acts. Ballou had filed a written pretrial objection to the admission of the evidence, which the district court overruled. He did not renew his objection at trial.

Although the jury convicted Ballou of rape and aggravated indecent liberties with a child, it acquitted him of aggravated criminal sodomy. The district court sentenced him to a life sentence without the possibility of parole for 25 years on each count. The court ordered consecutive sentences, for a total controlling sentence of lifetime imprisonment without parole for 50 years. The district court also imposed lifetime postrelease supervision for each charge.

Ballou timely appealed his convictions and sentence. The Court of Appeals assumed one error—that the prosecutor committed error by expanding the time frame in which the State alleged the crime occurred. But the panel held the assumed error was harmless. It rejected all other claims of error. See *Ballou*, 2017 WL 3575610. We granted Ballou's petition for review and the State's cross-petition seeking review of the panel's decision to assume the prosecutor erred by expanding the time frame for the alleged crimes. Additional facts are set forth as necessary below.

ANALYSIS

ISSUE 1: *Harmless prosecutorial error occurred.*

Ballou argues prosecutorial error occurred because the State, during its closing argument, expanded the time frame in which it alleged the crime occurred. In the State's initial complaint and two later amended complaints, the State alleged Ballou committed the charged offenses "on or about the 13th day of April, 2014." In opening statements, the State told the jury the "story that you're going to hear begins on April 13th, 2014." Later in the trial, the State called Norris as a witness and she testified the crime occurred on

6

April 13, 2014. But the States broadened the alleged time frame when, during its closing argument, the prosecutor discussed the evidence about when the crime occurred and told the jury "on or about" could encompass a four-and-one-half-month period:

> "The act occurred on or about, very important words, 'or about' the 13th day of April 2014. There's been some confusion about the exact time that this happened, exact date that this happened. There's been some argument about that. [Norris] said, well—at first, she said I thought it might have been Easter, week before that, or week after that, maybe Mother's Day, but she narrowed it down to what she thinks was April 13th. Okay. So that's the evidence we have regarding that.
>
> "And it's important that is says 'on or about.' Why does it say 'on or about'? Well, sometimes you don't know exactly when a crime occurred. You go on vacation for four weeks. You come home. Your house is burglarized. You can't say the day. You can't say it actually happened on this time. Sometimes you can, you know, if the neighbor saw the guy coming in and out and wrote it down, but a lot of times you can't. So it's not required that you find that this happened exactly on April 13th. You certainly can. And I believe the evidence presented is sufficient for that, but you just need to find that it occurred about that time. Mr. Ballou testified that, I think, the four of them, [Ballou, his daughter, his son, and Norris] had lived alone together in the house for about four and a half months before that, so we know it occurred in that time frame."

Ballou objected to the State's comments and the district court overruled his objection.

On appeal, Ballou asserts the prosecutor erred by misstating the law defining the phrase "on or about." For support he cites *State v. Murr*, No. 98,231, 2009 WL 596514 (Kan. App. 2009) (unpublished opinion). Considering Ballou's argument, the Court of Appeals panel concluded "the holding and facts from *Murr* are analogous and persuasive. Thus, for the sake of argument, we will assume, for the present purpose only, that the prosecutor's statements were a misstatement of the law and therefore amounted to error."

7

*Ballou*, 2017 WL 3575610, at *7. But the panel concluded the assumed error was harmless and did not require it to reverse Ballou's conviction. 2017 WL 3575610, at *8.

The State filed a conditional cross-petition asking this court to hold that the prosecutor's comments were not a misstatement of law and no error occurred.

In considering a claim of prosecutorial error, we follow a two-step analysis. We first determine whether an error occurred. Second, if an error has been found, we evaluate the prejudice it caused to determine whether it was harmless. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). At the first step, error occurs if the appellate court determines the prosecutor's actions or statements "fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109. A criminal defendant establishes the first prong by establishing the prosecutor misstated the law or argued a fact or factual inferences with no evidentiary foundation. See *State v. Wilson*, 309 Kan. 67, 78, 431 P.3d 841 (2018); *State v. Hilt*, 307 Kan. 112, 124, 406 P.3d 905 (2017).

1.1 *The prosecutor erred.*

Ballou mainly argues the prosecutor's expansive interpretation of "on or about" amounted to a misstatement of the law. The Court of Appeals panel assumed the validity of this argument and moved to the second step of evaluating the effect of the assumed error. *Ballou*, 2017 WL 3575610, at *7. The State asks us to hold that the statement was not outside the wide latitude permitted the prosecutor. It, like Ballou, focuses on the legal meaning of the phrase "on or about." We do not reach these legal arguments, however, because they depend on a fallacious assumption that the argument, whether it misstates the law or not, fits the facts. But no evidence suggests the charged crimes occurred during

8

a significant portion of the four-and-a-half months Ballou and his family lived in the house prior to April 13, 2014. Thus, there is no factual support for the prosecutor's argument.

To the extent there was any discrepancy in the time frame alleged, it related to the possibility the crimes occurred *after* April 13, 2014. Ballou's cross-examination of Norris revealed some uncertainty about the date of the incident. In Norris' earlier statements to the investigators she expressed confusion about when the crimes occurred. She offered Memorial Day (May 26, 2014), Mother's Day (May 11, 2014), or Easter (April 20, 2014) as approximate times. On redirect, Norris testified she later determined the date because she knew she had quit her job the day after Ballou committed the crimes and she had verified the date by going through her paystubs to determine the date she quit. The State admitted into evidence documents supporting the dates of her employment.

Yet no evidence suggested the incident charged in the complaint occurred before April 13, 2014. In fact, before the State's closing argument neither allegations, arguments, nor evidence showed the crimes occurred before April 13, 2014. The prosecutor thus made an argument outside the evidence. And, as we have noted, a prosecutor commits error by arguing a fact or a factual inference with no evidentiary foundation. See *Wilson*, 309 Kan. at 78.

1.2 *The error did not prejudice Ballou.*

Although the prosecutor erred, we hold the misdirection about the potential time frame in which the crime occurred did not prejudice Ballou. In assessing the prejudice caused by a prosecutor's error, an appellate court applies the traditional constitutional harmlessness inquiry demanded by *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Under this test, prosecutorial error is harmless if the State can

9

show "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict." *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011); see *Sherman*, 305 Kan. at 111.

To determine whether an error is harmless under *Chapman*, appellate courts must:

"consider any and all alleged indicators of prejudice, as argued by the parties, and then determine whether the State has met its burden—*i.e.*, shown that there is no reasonable possibility that the error contributed to the verdict. The focus of the inquiry is on the impact of the error on the verdict. While the strength of the evidence against the defendant may secondarily impact this analysis one way or the other, it must not become the primary focus of the inquiry." *Sherman*, 305 Kan. at 111.

Applying this test here, we conclude the State has met its *Chapman* burden of establishing there is no reasonable possibility the error contributed to the verdict.

While Ballou's cross-examination of Norris revealed that she had at first offered several possible dates, her initial uncertainty was replaced with a seeming assurance she had pinpointed the correct date by tethering it to when she quit her job. And corroborating evidence, including exhibits introduced by the State and admitted during Norris' testimony, supported the pinpointed date—April 13, 2014—as the correct date.

To the extent Norris' early statements suggested a different date, Ballou had notice of her statements, as evidenced by his questioning of Norris in which he tested the State's evidence. His questioning reveals he was not misled into pursuing an inappropriate defense based on the evidence established at trial.

Even so, Ballou focused on April 13 when he testified and put on multiple defense witnesses. Through this evidence, he tried to establish his whereabouts and his own timeline of events on April 13, 2014. And given Norris' testimony about why she pinpointed April 13 and the focus on April 13 throughout the trial, this defense remained relevant. But Ballou did not pursue an alibi defense. As the Court of Appeals noted, Ballou did not dispute that he was with his daughter on April 13 in the house around the time Norris stated the crimes took place.

Ballou's overall defense was that he did not commit the acts alleged regardless of the specific date. Ballou testified about various motives Norris and her adult daughter may have had for fabricating the allegations. The Court of Appeals correctly held Ballou was not misled into pursuing an all-or-nothing, date-specific defense. See *Ballou*, 2017 WL 3575610, at *7-8.

Based on the context in which the prosecutor's comments were made, the nature and strength of the evidence about the date, the timing and manner in which the evidence was introduced, and the nature of Ballou's defense, we affirm the Court of Appeals' ruling. See *Ballou*, 2017 WL 3575610, at *7-8. After "consider[ing] any and all alleged indicators of prejudice, as argued by the parties, . . . the State has . . . shown that there is no reasonable possibility that the error contributed to the verdict" *Sherman*, 305 Kan. at 111.

ISSUE 2: *The district court did not err in admitting into evidence the child's interview.*

Ballou actively litigated the admissibility of the child's interview through pretrial proceedings. He filed two motions in which he asked the district court to exclude evidence of Stockard's interview. In the first, Ballou moved to "exclude [the child's] interview for improper interviewing techniques." In the second, he asked for a pretrial

11

ruling that the interview and Stockard's testimony would constitute expert testimony because Stockard used the Finding Words/ChildFirst protocol when interviewing the child. Before discussing the specifics of these motions, we note the terminology attached to the protocol. First named Finding Words, the protocol's name changed to ChildFirst around 2013. The parties and witnesses use both names, as will we depending on which term a party or witness used or we will use the term Finding Words/ChildFirst. But we clarify that, regardless of the label, we are addressing only one protocol.

Ballou's first motion attacked the interview as "not reliable" because it resulted from overly suggestive interviewing techniques. He argued any resulting disclosure was not voluntary. Ballou supported his motion with cases decided under the Confrontation Clause of the Sixth Amendment to the United States Constitution. He argued these cases stand for the principle that suggestibility in a forensic interview undermines reliability, not simply credibility, and the issue should thus be determined pretrial so the jury does not hear any tainted evidence. Ballou also cited an article and *State v. Michaels*, 136 N.J. 299, 642 A.2d 1372 (1994), for authority that a "taint hearing" should be conducted by the district court.

In *Michaels*, the defendant showed "'some evidence'" that the victims' statements were the result of suggestive or coercive interviewing techniques and, based on that showing, the New Jersey Supreme Court held the trial court should have conducted a taint hearing. 136 N.J. at 320-21. The New Jersey Supreme Court held that, at such a hearing, the burden shifts to the State to prove the reliability of the proffered statements and testimony by clear and convincing evidence. 136 N.J. at 321. Once the State meets that burden, the statements may be admitted at trial and the jury must assess the credibility of the statements. 136 N.J. at 323.

Ballou neither discussed nor cited *State v. Gilliland*, 294 Kan. 519, 276 P.3d 165 (2012), in which this court declined to answer the question of "whether a trial court *must* take on a gate-keeping role and determine reliability before allowing a child's statement to be presented to a jury" and cautioned that "our discussion of the issue should not be read to imply that outcome." 294 Kan. at 547. In doing so, we noted *Michaels* was "controversial" and a majority of jurisdictions have rejected its holding. 294 Kan. at 547.

In response to Ballou's motion, the State distinguished the egregious circumstances involved in the interviews at issue in *Michaels*. It also criticized Ballou's reliance on Confrontation Clause cases involving hearsay statements by children alleging sexual abuse because the reliability issues addressed in those cases concerned hearsay, not purported problems with the interview leading to the hearsay statements. The State argued the child's testimony should be governed by general rules of competency, citing *State v. Poole*, 124 Idaho 346, 859 P.2d 944 (1993). It further argued whether an interview is suggestive is a credibility issue that should go to the jury, citing *State v. Karelas*, 28 So. 3d 913 (Fla. Dist. Ct. App. 2010).

Ballou's second motion asked the court to treat Stockard as an expert in testifying about the Finding Words/ChildFirst protocol. Ballou argued the district court should apply K.S.A. 2018 Supp. 60-456(b) and conclude Stockard's testimony did not meet its requirements. K.S.A. 2018 Supp. 60-456(b) applies to the testimony of an expert witness "qualified as an expert by knowledge, skill, experience, training or education" and states that the expert may testify in the "form of an opinion or otherwise if: (1) The testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has reliably applied the principles and methods to the facts of the case." Through this language, the Legislature intended to bring "the requirements for admission of expert opinion into line with the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592-94, 113

13

S. Ct. 2786, 125 L. Ed. 2d 469 (1993)." *State v. Sasser*, 305 Kan. 1231, 1245, 391 P.3d 698 (2017). And Ballou argues the interview does not comply with *Daubert*'s holding.

The State responded the interview itself is not expert testimony and thus not subject to K.S.A. 2018 Supp. 60-456(b) or *Daubert*. It further posited Stockard would testify as a fact witness, not an expert. The State also pointed out that if interviewing techniques are treated as an area of expertise, every police detective is an "expert" and that the Finding Words/ChildFirst protocol should not be subject to K.S.A. 2018 Supp. 60-456(b) because it is neither new nor novel.

The district court held a hearing on these motions at which Ballou's expert, Dr. Robert Barnett, testified. He said he personally used his own method of interviewing that was not based on any specific protocol but was based on his "education, training and experience as well as keeping up in my field through reading and consultation with other psychologists." Citing studies by the National Institute of Child Health and Human Development (NICHD), he emphasized the importance of using nondirective questioning. He criticized the Finding Words protocol as not being supported by data about its reliability or validity. He cited an NICHD article that criticized Finding Words, noting the article pointed out the biggest problem was that "Finding Words practitioners are not following the protocol." He indicated not following the protocol could introduce a higher error rate, which he defined to mean false positives and negatives. Barnett also testified, "[Q]uite frankly, a lot of [the Finding Words] protocol is entirely valid and is used by other people." But he criticized some aspects of Finding Words, including its use of anatomically correct drawings and dolls. And then he reiterated that his "biggest objection to the Finding Words protocol, based on the many interviews I've reviewed, is that people typically don't follow the protocol."

14

Barnett also addressed the specific deficiencies he observed in Stockard's interviews of the child—both the interview two years earlier when the child had been abused by her brother and the 2014 interview after Ballou had allegedly sexually abused her. Barnett stated research suggests a child's responses in later interviews are impacted by the first interview. He also cited confirmatory bias and noninvestigation of alternative hypotheses as problems that can arise during an interview. He believed Stockard approached the interview with the belief the child had been abused by Ballou and therefore failed to explore alternative hypotheses. He also criticized her use of leading questions, which the NICHD protocol advises only to use when an interviewer runs into trouble during the interview. He identified specific questions that he described as communicating the appropriate answers to the child. He said this skews the results, according to "empirical research," but he failed to cite a particular source. Barnett described reliability in this context: "If you did an interview this way and did an interview with nonleading questions, the presumption is you would get two different results; and so, therefore, no reliability." He cited no research testing that presumption.

Counsel then played both the interviews from 2014 (when Ballou was the alleged perpetrator) and 2012 (when another family member was the alleged perpetrator). Periodically, the videos were paused so Barnett could address a particular concern with the interview.

After going through this process with the 2014 video, Barnett concluded the Finding Words protocol was followed "in some regards, not in all." He testified the protocol was not followed in these areas: "Investigation of truth or lie, leading questions, confirmatory bias, lack of investigation of alternative hypotheses." He later identified similar issues of concern with the 2012 interview. He also expressed concern about the length of the 2012 interview and the child's distress during the interview. He criticized the presence of the child's mother at points during the 2012 interview, observing that

15

some disclosure came from the mother rather than the child. Ultimately, however, Barnett agreed that the child, not the mother, identified the place the child was touched and that the child was able and willing to correct the interviewer when the interviewer got something wrong. He also acknowledged the child resisted what might be seen as pressure from authority figures to say someone else touched her inappropriately. Yet he faulted repeated questions being asked on this issue, while acknowledging the child did not change her response after repeated questioning.

Barnett was not asked, nor does the testimony he offered seem to imply, that he found the results of the entire interview unreliable. Instead, he criticized particular practices used during the interview and explained the potential issues those practices created.

Stockard testified about her education, training, and interviews of the child.

On a different date, the State's expert, Kelly Robbins, testified. She detailed her experience, training, and education. She also addressed the Finding Words/ChildFirst protocol. Robbins described the interviews as "semi-structured" to allow the interviewer to adapt to the child based on the child's developmental capacity and spontaneity. She testified interviewers may customize their interviews based on the children, and she emphasized the need for open questions to avoid issues of suggestibility.

Robbins addressed testability of the protocol. She pointed out absolute efficacy could not be determined because it was impossible to know the truth of particulars the child reported. But she cited the testing of the interviewing techniques that had led to the development of best practices. She noted, however, that different children and circumstances sometimes required use of different techniques. Robbins distinguished the interviewing process from a scientific process in which an error rate can be established.

16

Robbins reviewed Stockard's 2014 interview of the child and concluded Stockard appropriately followed the ChildFirst protocol. Robbins identified some leading questions but noted the child resisted leading questions. Overall, Robbins concluded the interview was not suggestive. Robbins reached similar conclusions after reviewing Stockard's 2012 interview. Robbins again noted some leading questions but observed that the child resisted any suggestion she should adopt the premise of those questions. Robbins also produced a report responding to the issues raised by Barnett through his report and testimony.

In ruling on the motions, the district court prefaced its findings by stating it would address the motions simultaneously because the issues were "closely tied together." The district court agreed with the State's position that K.S.A. 2018 Supp. 60-456 did not apply, reasoning Stockard was a fact witness. It analogized Stockard's testimony to that of a treating physician:

> "That the treating physician has specialized training, as used in the statute, his medical degree does not, in and of itself, mean he is testifying as an expert. He is testifying about what he saw, heard, observed, and what actions he took as a result. Here, Miss Stockard is drawing no conclusions as to what did or did not happen between the defendant and [the child]. She is merely gathering information from the complaining witness. That she has chosen to use a specific technique to gather that information does not automatically subject her—subject her fact gathering to a 60-456 analysis. Nowhere in the interview does she offer an opinion as to the truth of the statements offered by [the child]."

The district court continued to explain why it found the discussion of the purported science of child interviews a distraction:

> "I think an attempt to get me to focus on the purported science of child interviews serves only as a diversion from the statute itself. I would note 60-456 is testimony in the

17

form of opinion or inferences. Such do not exist in the context of the interview itself. The statute is not intended to apply to a fact witness, nor should the reverse be true. The opinion of an expert is not a fact. It is just an opinion regardless of that expert's training or knowledge."

The district court did not explicitly address the reliability of the Finding Words/ChildFirst protocol or Stockard's implementation of the protocol. But the district court ruled the child's statement and Barnett's testimony attacking the weight and credibility of Stockard's interview were admissible.

On appeal, Ballou attacked the Finding Words/ChildFirst protocol as not having been shown to be reliable, analogizing the protocol to other areas of scientific inquiry. Then he faulted any deviation from the protocol as violating K.S.A. 2018 Supp. 60-456(b)/*Daubert*. He next argued if the interview was not expert testimony, it should have nonetheless been excluded as unduly suggestive. He again relied on the *Michaels* decision from New Jersey without acknowledging this court's discussion of that case in *Gilliland*.

The Court of Appeals was not persuaded. It concluded Stockard's testimony was not expert testimony. The panel characterized Ballou's arguments as "attempting to fit a square peg in a round hole." *Ballou*, 2017 WL 3575610, at *10-11. It distinguished cases that Ballou relied on, noting that while interviewing techniques may be outside the understanding of the jury, the interviews produced by those techniques are not necessarily inadmissible because the average juror does not understand the underlying methods. The panel also noted that the interviewer, during an interview, does not offer an opinion subject to K.S.A. 2018 Supp. 60-456(b). 2017 WL 3575610, at *10.

The panel next considered Ballou's *Michaels* argument. It distinguished Stockard's interview from the problematic interviews that led to the *Michaels* opinion. The panel

18

concluded Stockard's techniques were not impermissibly suggestive, and therefore the district court did not abuse its discretion by admitting the interview at trial. 2017 WL 3575610, at *11-12.

On review, Ballou asks this court to find the panel erred in concluding the interview was not scientific evidence or subject to *Daubert*. He draws an analogy to evidentiary requirements relating to testing for the crime of driving under the influence. Because Stockard had been trained in a particular method for interviewing a child believed to have been abused, Ballou argues K.S.A. 2018 Supp. 60-456 requires the State to establish the scientific reliability of the method used in conducting the interview before the jury can hear evidence about the child's statements. Ballou challenges the panel's conclusion that the interviewing techniques were not unduly suggestive.

2.1 *K.S.A. 2018 Supp. 60-456(b) does not apply to the interview*.

Kansas rules of evidence are generally concerned with how a party presents facts to the trier of fact. See K.S.A. 60-401. Typically, every person is qualified to be a witness and provide testimony about relevant matters within their personal knowledge. K.S.A. 60-407; K.S.A. 60-419. But see K.S.A. 60-417 (witness disqualified if unable to be understood by judge and jury or unable to understand duty to tell the truth). In other words, most witness testimony is concerned with establishing facts.

K.S.A. 2018 Supp. 60-456 imposes some limitations on a witness' testimony, however, and Ballou argues those limitations required the district court to rule that Stockard's interview of the child was inadmissible. Appellate courts apply a multi-step analysis when reviewing claims of evidentiary error. Ballou's argument about the application of K.S.A. 2018 Supp. 60-456 places us at the second step in the multi-step analysis where an appellate court undertakes a de novo assessment of which legal

19

principles apply. See *State v. Shadden*, 290 Kan. 803, 817-18, 235 P.3d 436 (2010) (identifying tiered appellate analysis of [1] reviewing objections to relevancy; [2] determining which rules of evidence or legal principles apply; [3] reviewing the trial court's application of the rules).

To determine K.S.A. 2018 Supp. 60-456(b)'s applicability, we must determine legislative intent. The plain language of the statute is the best means for discerning this intent. Only if the statutory language is unclear or ambiguous will we move on to consider other tools of statutory construction. *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, 48, 392 P.3d 68 (2017).

K.S.A. 2018 Supp. 60-456(a) applies to lay witnesses and allows them to provide testimony in the form of opinions or inferences that are rationally based on the witness' perception; helpful to understanding the witness' testimony; and not based on scientific, technical, or other specialized knowledge. Subsection (b) applies to witnesses who are qualified as an expert. In full, K.S.A. 2018 Supp. 60-456(b) provides:

> "If scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training or education *may testify thereto in the form of an opinion or otherwise* if: (1) The *testimony* is based on sufficient facts or data; (2) the *testimony* is the product of reliable principles and methods; and (3) the *witness* has reliably applied the principles and methods to the facts of the case." (Emphases added.)

The statute focuses on testimony. But Ballou does not focus on Stockard's testimony. Instead, he focuses on the child's statement, arguing the district court should not have admitted it. Yet K.S.A. 2018 Supp. 60-456(b) does not provide guidelines or rules about the admissibility of out-of-court statements. And Stockard's testimony only

20

facilitated the admission of the child's statement by laying the foundation for when, where, and under what circumstances the recording of the statement was made. Stockard's role was that of interviewer, not as a witness to the crime. And she did not offer an opinion during the interview. Given those circumstances, the statutory language itself reveals the infirmities in Ballou's argument that the interview is governed by 60-456(b).

The statute governs circumstances in which a witness may "testify." To "testify" is "[t]o give evidence as a witness <she testified that the Ford Bronco was at the defendant's home at the critical time>" or "to bear witness <the incomplete log entries testified to his sloppiness>." Black's Law Dictionary 1704 (10th ed. 2014). "Testimony" is "[e]vidence that a competent witness under oath or affirmation gives at trial . . . ." Black's Law Dictionary 1704 (10th ed. 2014). And a "witness" is "[s]omeone who sees, knows, or vouches for something <a witness to a testator's signature>. 2. Someone who gives testimony under oath or affirmation . . . ." Black's Law Dictionary 1838 (10th ed. 2014). Because some of these terms rely on the word "evidence," we note that Kansas law defines "evidence" as "the means from which inferences may be drawn as a basis of proof in duly constituted judicial of fact-finding tribunals, and includes testimony in the form of opinion, and hearsay." K.S.A. 60-401(a).

Our review of the interview reveals Stockard offered neither opinion nor factual testimony. She did not give evidence or bear witness during the interview. Instead, during the interview Stockard engaged in a fact-finding process to learn about what, if anything, happened. To that end, she asked the child questions. She did make some factual representations about other witness' statements. But each time, Stockard told the child who had made the statement and the context sought to get information from the child. Nothing Stockard said or did in the interview constituted testimony or testifying, nor did any of her comments constitute an opinion as contemplated by K.S.A. 2018 Supp. 60-

21

456(b). K.S.A. 2018 Supp. 60-456(b) does not provide a basis for excluding a forensic interview.

### 2.2  *Stockard's testimony and the interview were admissible.*

Nor does the statute support excluding Stockard's trial testimony. By way of introducing her, the State established Stockard's background, including her education as a social worker, her training in the Finding Words/ChildFirst protocol, and her experience in conducting interviews. This factual background has similarity to the foundation often laid for expert testimony, but background alone does not make the entire testimony and interview subject to a K.S.A. 2018 Supp. 60-456/*Daubert* process. As discussed, what separates her testimony from that of an expert is that she never offered an opinion or otherwise testified to anything based on her scientific, technical, or other specialized knowledge. She simply testified to what she, the detective, Norris, or the child said or did. This testimony was based on her personal observations. She did not offer an opinion about the reliability of the child's statement or whether she found the statement believable or truthful. She simply relayed the factual circumstances under which the statement was taken.

Also, contrary to Ballou's argument, expert testimony is not necessarily required as a foundation for introducing a child witness' interview into evidence. Ballou argues the Court of Appeals panel held that expert testimony was required. But he misreads the panel's analysis. Nor does his argument find support in the authorities he cites, which were discussed by the panel—*State v. Gaona*, 293 Kan. 930, 270 P.3d 1165 (2012), and *State v. Huntley*, 39 Kan. App. 2d 180, 177 P.3d 1001 (2008). See *Ballou*, 2017 WL 3575610, at *9-10.

22

In *Gaona*, 293 Kan. 930, an investigator trained in Finding Words interviewed the child victim. The investigator testified, and the child's interviews were admitted into evidence. The State also proffered an expert witness—the same expert used here, Robbins. We classified Robbins' testimony in *Gaona* as addressing two general areas: (1) the Finding Words protocol as a way to bolster the State's investigator who employed the protocol and rebut the defense expert who criticized the investigator's interview, and (2) to explain common characteristics of abused children and to explain how the child victim in that case demonstrated those characteristics. 293 Kan. at 947.

We held Robbins was not qualified to offer the second category of testimony about the child's behavior because Robbins, at that time, lacked training in psychology, psychiatry, social work, or child development. See 293 Kan. at 947-48. In contrast, we held the district court did not abuse its discretion in allowing Robbins to testify about the Finding Words protocol and, more generally, about interviews of children who have alleged sexual abuse. We noted: "Jurors do not possess this information, and Robbins' testimony was helpful to their understanding of the case." 293 Kan. at 948.

But the decision did not go as far as Ballou suggests; it did not hold that an expert *must* lay the foundation for an interview of a child victim. And, here, the district court recognized the role of experts discussed in *Gaona*. The district court specifically ruled the child's statement was admissible and that Ballou could present his expert testimony to the jury, although he ultimately chose not to do so.

Likewise, in *Huntley*, 39 Kan. App. 2d 180, the Court of Appeals panel did not hold an expert must lay a foundation about the reliability of the interview. Instead, it considered whether the district court abused its discretion when it denied a continuance after determining it would not admit the defense expert's testimony about whether investigative techniques had been suggestive. Huntley argued the child's natural mother

23

was suggesting testimony to the child and the expert's testimony was relevant to bolstering his theory of defense. The district court disagreed and concluded expert testimony was unnecessary because a juror using common sense could assess whether a mother had been instrumental in suggesting testimony to her child.

The *Huntley* panel reversed the district court and discussed caselaw from other jurisdictions

> "holding that the proper protocols and techniques used to interview child victim witnesses is a matter *not* within the knowledge and understanding of the average juror. . . . This caselaw seems to be in step with an emerging trend to recognize and permit expert testimony on the impact of suggestive interviewing techniques on child witnesses." 39 Kan. App. 2d at 188.

The panel concluded the district court made an error of law based on the district court's legal conclusion that any defense expert testimony would be inadmissible. 39 Kan. App. 2d at 189. Again, however, the court did not hold that expert testimony about the efficacy of a protocol used when conducting an interview of a child is necessary before the jury can hear or view the interview.

Ballou finally attempts to bolster his argument by analogizing the interview to a test for blood alcohol content. Before test results are admitted, we have held that a precise step-by-step protocol must be followed and scientific reliability must be established or test results are inadmissible. See *Shadden*, 290 Kan. at 823-25. And, in a supplemental memorandum to the district court, Ballou compared the interview to horizontal gaze nystagmus testing, citing this court's opinion in *City of Wichita v. Molitor*, 301 Kan. 251, 341 P.3d 1275 (2015). There, we held the test was scientific and its reliability must be established before it could be admitted. 301 Kan. at 260-64.

Ballou's comparisons are inapt, however. An interview of a child witness is not the type of scientific or technical process that is amenable to a precise, testable result. Regardless of protocol, no expert can proclaim the accuracy of the result of the interview or any conclusions to be drawn from it because no metric has been established of assuring reliability or truthfulness. An interview is by its nature dynamic, where the discussion may vary as information is revealed. It is unrealistic to expect the same step-by-step process one can apply to some areas of scientific or technical inquiry to apply to test a child's disclosure that he or she has suffered abuse. Robbins' testimony to the district court supports these conclusions. And nothing in Ballou's expert's testimony suggests a meticulous step-by-step process is required or that the failure to follow a step negates the entire results of the interview. Indeed, Barnett testified he does not follow any particular protocol. Barnett identified problems with the interview that may impact some aspects of the interview. But nowhere in his opinion did he go so far as to say the entire disclosure was rendered suspect or unreliable.

Unless some area of study can develop such a process, we are left with different fields of inquiry, such as law enforcement, psychology, psychiatry, and social work, developing ways to obtain information about alleged abuse. And to the extent that the processes they develop are flawed, those flaws should be presented to a jury to weigh in its analysis. Another case, *State v. Howling*, 310 Kan. __, __ P.3d __ (No. 116,524, this day decided), slip op. at 3-7, shows a jury's ability to do just that. But to the extent that a process yields an unreliable result because of improper suggestions during questioning, Kansas law provides other potential avenues to explore that possibility and exclude the evidence if appropriate.

In summary, expert testimony is not necessarily required as a foundation to introducing a child witness' interview into evidence and no specific formula or protocol need be followed when conducting an interview. Thus, the failure to present expert

25

testimony or for an interviewer to follow a specific protocol does not render the interview inadmissible.

2.3 *Ballou failed to preserve his argument about the need for a taint hearing*.

As we have discussed, Ballou repeatedly invoked *Michaels*, 136 N.J. 299, which held that New Jersey courts must hold a taint hearing in certain cases. In *Gilliland*, we first considered *Michaels* and noted that "Kansas does not formally recognize pretrial taint hearings." 294 Kan. at 545. And we did not do so in *Gilliland* and have not done so since. In *Gilliland*, we noted that the district court had considered the ultimate finding mandated in *Michaels* by concluding the questioning was not unduly suggestive or leading and that the interview should be admitted. 294 Kan. at 546-47.

Ballou makes no attempt to explain why the evidentiary hearing conducted by the district court did not constitute at least the functional equivalent of a taint hearing. He received more process than did Vernon Ray Gilliland, who had been denied the ability through the district judge's ruling to present his own expert's testimony. In *Gilliland*, we recognized authorities allowing a defendant to present the issue of reliability without convening a hearing formally called a "taint hearing." See 294 Kan. at 547-48 (citing out-of-state cases "permitt[ing] an inquiry into suggestiveness through the use of competency hearings").

Here, citing *Michaels*, Ballou argued the statements were tainted and unreliable. He presented Barnett's testimony. After hearing Ballou's evidence, the district court denied his motion. The court ruled the jury could hear the interview. It also ruled that Ballou's expert could testify. Granted, the district court's rulings about reliability were not as precise as those in *Gilliland* or as detailed as the *Michaels* court directed. But Ballou had the obligation to request more precise or appropriate findings of facts and

conclusions of law. His failure to do so puts this issue beyond this court's review. "Generally, litigants and their counsel bear the responsibility for objecting to inadequate findings of fact and conclusions of law in order to give the trial court the opportunity to correct such inadequacies, and, when there is no objection, omissions in findings are not considered on appeal." *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016).

Finally, we note that the Court of Appeals panel considered the reasons the interview was "not impermissibly suggestive" and, based on those reasons, held "the trial court did not abuse its discretion in admitting the interview at trial." *Ballou*, 2017 WL 3575610, at *12. In Ballou's petition for review, he argues the panel "incorrectly downplayed the suggestive nature of the interview and pressure applied by Norris" on the child. But Ballou does not challenge the panel's holding that an abuse of discretion standard applies and under that standard, as applied by the panel, he must show that no reasonable person would agree that the interview was not unduly suggestive. He has failed to meet that burden.

We hold the district court did not err in admitting the statement of the child.

ISSUE 3: *Ballou failed to preserve his pretrial objection to the admission of prior acts of sexual misconduct under K.S.A. 2018 Supp. 60-455(d).*

Ballou argues the Court of Appeals panel erred in finding he failed to preserve his objection to the admission of K.S.A. 2018 Supp. 60-455(d) evidence by not contemporaneously objecting at trial. The panel noted Ballou filed a written pretrial objection but did not renew his objection at trial when the State presented evidence about uncharged acts of sexual misconduct. The panel held a timely objection under K.S.A. 60-404 requires making a specific objection on the record contemporaneous with the introduction of the evidence at trial and Ballou failed to make such an objection. See

*Ballou*, 2017 WL 3575610, at *13 (citing *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862, *cert. denied* 137 S. Ct. 310 [2016]).

As Ballou essentially acknowledges in his petition for review, the panel's reasoning relies on and follows this court's decisions. He argues, however, this court's contemporaneous objection rule is inconsistent with the plain language of K.S.A. 60-404, which states:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

Ballou asserts his written pretrial objection meets the dictionary definition of timely, which he argues is different from contemporaneous. He cites dictionary definitions for both, defining "timely" as "'coming early or at the right time,'" and "contemporaneous" as "'existing, occurring, or originating during the same time.'" But he does not explain how our caselaw is inconsistent with his cited definitions for timely and contemporaneous. And we conclude no conflict exists.

We have explained a pretrial objection alone will not usually be considered timely for purposes of K.S.A. 60-404 because "an in limine ruling 'is subject to change when the case unfolds,' *Luce v. United States*, 469 U.S. 38, 41, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984)." *State v. Inkelaar*, 293 Kan. 414, 421, 264 P.3d 81 (2011), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). This rule acknowledges that different, more, or less evidence may come in at trial than was admitted or proffered at a pretrial hearing. Or a district court judge may simply see the issue in a different light after hearing additional arguments and evidence. And a "timely *interposed* . . . objection" is required by the plain language of K.S.A. 60-404. (Emphasis added.)

28

"Interpose" means "to place between or in an intermediate position[;] to put forth by way of interference or intervention[;] to introduce or throw *in between the parts of a conversation or argument*." (Emphasis added.) Webster's Third New International Dictionary 1182 (1993). A timely interposed objection, thus, comes *between* the introduction of the evidence at trial and its admission. In other words, a timely interposed objection is one that gives the district court the opportunity to make the ruling *contemporaneous* with an attempt to introduce evidence at trial. See *Inkelaar*, 293 Kan. at 421. This is because "contemporaneous" means "occurring, or existing at the same time." Black's Law Dictionary 397 (11th ed. 2019). Accordingly, our contemporaneous objection rule tracks with the plain language of K.S.A. 60-404. See *Dupree*, 304 Kan. at 62. And to hold otherwise would not further the legislative intent of giving "'"the trial court the opportunity to conduct the trial without using the tainted evidence, and thus avoid possible reversal and a new trial"'" *State v. King*, 288 Kan. 333, 342, 204 P.3d 585 (2009).

We thus affirm the Court of Appeals panel's conclusion on this point. We pause to note our disagreement with one aspect of the panel's analysis, however. The Court of Appeals alternatively found Ballou had waived the argument because after the State admitted the complained-of evidence, he used it to discredit the child's testimony. See *Ballou*, 2017 WL 3575610, at *13-14. In support of its analysis, the panel cited this court's decision in *State v. Berriozabal*, 291 Kan. 568, 243 P.3d 352 (2010). Yet the circumstances in *Berriozabal* are distinguishable from the facts here. Jesus Berriozabal challenged the admission of evidence in a pretrial motion but failed to object contemporaneously to its admission at trial. He then used the evidence throughout trial, discussing it in his opening statement, using it to question multiple witnesses, and generally relying on it in the overall theme and theory of his defense to the extent that we

29

determined his "defense strategy is inconsistent with the argument Berriozabal asserts on appeal." *Berriozabal*, 291 Kan. at 580.

Ballou did not use the evidence as part of a broader argument or theory of defense. Rather, Ballou merely responded to the State's reliance on the evidence through cross-examination. Under the facts here, it would be, as Ballou argues, "unfair to now say [the] evidence, which [he] had previously objected to, is untouchable and if he does address it, he waives any objections he may have had to the evidence."

Reliance on *Berriozabal* was not essential to the panel's holding, however. And we affirm its ultimate conclusion that Ballou did not properly preserve his objection.

ISSUE 4: *The lack of an independent psychological exam was not error.*

Ballou argues the district court and Court of Appeals erred in determining it was appropriate to deny his pretrial motion for an independent psychological examination of Ballou's daughter.

Here, the district court applied the appropriate factors for determining whether a criminal defendant is entitled to an independent psychological evaluation of a witness. We have identified six relevant factors:

"(1) whether there was corroborating evidence of the complaining witness' version of the facts, (2) whether the complaining witness demonstrates mental instability, (3) whether the complaining witness demonstrates a lack of veracity, (4) whether similar charges by the complaining witness against others are proven to be false, (5) whether the defendant's motion for a psychological evaluation of the complaining witness appears to be a fishing expedition, and (6) whether the complaining witness provides an unusual response when

30

questioned about his or her understanding of what it means to tell the truth." *Berriozabal*, 291 Kan. 568, Syl. ¶ 5.

We review a district court's application of these factors—often called the *Gregg* factors, see *State v. Gregg*, 226 Kan. 481, 489-90, 602 P.2d 85 (1979)—and its ultimate decision to grant or deny a motion for a psychological evaluation of a witness for an abuse of discretion. *Berriozabal*, 291 Kan. at 580. An abuse of discretion occurs if: (1) no reasonable person would take the view adopted by the district court; (2) the decision is based on an error of law; or (3) the decision is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The party asserting the district court abused its discretion has the burden to show such an abuse of discretion. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015).

As to the first factor, the district court found there was corroborating evidence of the child's allegations because Norris walked in as it was happening and her account of the incident fit with the child's. As to the second and third factors, the district court found there was no evidence presented that the child was mentally unstable or had problems with veracity. As to the fourth factor, the district court found Ballou had presented no evidence that the child had made similar accusations later proven false. As to the fifth factor, the district court found Ballou's motion appeared to be a fishing expedition, and his "suggestion that such an evaluation would, in fact, be good for the child [lends] no support to his request." As to the sixth factor, the district court found the child did not show any unusual or unexpected responses when asked to tell the truth and explain if she understood what it means to tell the truth and why it was necessary to do so in her interview with Stockard, in her testimony at the preliminary hearing, or in her testimony at the pretrial motion hearing.

31

Ballou's argument on appeal seeks to undercut these findings. Each argument goes to the weight and credibility of the evidence. He cites evidence and argues that evidence supports a contrary conclusion. But Ballou fails to show that *no* reasonable person would have taken the same position as the district court. "''If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said the trial court abused its discretion.''" *State v. Reed*, 282 Kan. 272, 280, 144 P.3d 677 (2006).

The Court of Appeals panel properly considered and rejected Ballou's arguments within the standard of review for abuse of discretion. And the panel directly cited the district court's findings on each factor. See *Ballou*, 2017 WL 3575610, at *14-16. Ballou has shown no error in its analysis, nor has he shown an abuse of discretion by the district court. Thus, he has not carried his burden on appeal. See *Robinson*, 303 Kan. at 90. In summary, we find no abuse of discretion in the district court's denial of his motion for an independent psychological evaluation of Ballou's daughter.

ISSUE 5: *Cumulative error did not deprive Ballou of a fair trial.*

Ballou argues that even if none of the errors he alleges are individually reversible, cumulative error deprived him of a fair trial. But we have found only one error—an error by the prosecutor in making an argument unsupported by the evidence. And we have held that error was not reversible. A single, nonreversible error does not establish reversible cumulative error. *State v. Williams*, 299 Kan. 509, 566, 324 P.3d 1078 (2014).

SUA SPONTE ISSUE: *The postrelease supervision order is illegal.*

Although not discussed by the parties, the district court's sentence for Ballou's two off-grid life sentence included lifetime postrelease supervision. But, under Kansas statutes, the life sentences for these crimes are followed by parole, not postrelease

supervision, and the imposition of postrelease supervision in this case makes the sentences illegal. See K.S.A. 2013 Supp. 21-5503(b)(2); K.S.A. 2013 Supp. 21-5506(c)(3); K.S.A. 2013 Supp. 22-3717(b)(5); K.S.A. 2013 Supp. 21-6627(a)(1)(B), (C); see also *State v. Ruiz-Ascencio*, 307 Kan. 138, 146, 406 P.3d 900 (2017); *State v. Phillips*, 295 Kan. 929, 950, 287 P.3d 245 (2012). This court may correct an illegal sentence at any time and may do so sua sponte. See K.S.A. 22-3504; *State v. Johnson*, 309 Kan. 992, 997, 441 P.3d 1036, 1040 (2019); *State v. Rogers*, 297 Kan. 83, 93, 298 P.3d 325 (2013). Typically, we emphasize that an appellate court should not decide any issue without input from the parties. See *State v. Toothman,* 310 Kan. ___, ___ P.3d ___, (No. 114,944, this day decided), slip op. at 7. But we discern no possible counterargument on this particular issue. And, in several cases, we have remedied the illegality by vacating the lifetime postrelease supervision term imposed at sentencing, and we do so here. See, e.g., *State v. Conrad*, 297 Kan. 76, 82, 298 P.3d 320 (2013); *State v. Seward*, 296 Kan. 979, 991-92, 297 P.3d 272 (2013)."Whether parole eligibility will eventually become an actuality is not for us to decide." *Johnson*, 309 Kan. at 998, 441 P.3d at 1040.

CONCLUSION

Ballou has failed to show reversible error in any of the issues raised on review. As a result, we affirm his convictions. We vacate the portion of the district court's judgment imposing postrelease supervision on Ballou's two hard 25 life sentences.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed in part and vacated in part.

NUSS, C.J., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:**  Senior Judge Malone was appointed to hear case No. 116,252 vice Justice Nuss under the authority vested in the Supreme Court by K.S.A. 20-2616.