NOT DESIGNATED FOR PUBLICATION

No. 125,032

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KELBY HORN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Thomas District Court; RICHARD J. RESS, magistrate judge. Opinion filed February 10, 2023. Affirmed.

*Isaac LeBlanc*, of Atwood, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BRUNS and WARNER, JJ.

PER CURIAM:  The rule in Kansas is that a party may not object to the admission of evidence on one ground and then on appeal argue the evidence should not have been admitted on some different ground. At the hearing on the State's motion to revoke his probation, Kelby Horn objected to the admission of two letters and a ring based on a lack of foundation. The court overruled his objection and admitted the evidence. But in this appeal, Horn complains that the court's admission of the letters and the ring was a due process violation because he and his counsel were not told about them until about 40 minutes before the hearing. Horn also argues to us that the admission of this evidence

was improper under K.S.A. 60-455. Because Horn did not preserve these issues for our review, we affirm.

In July 2021, Horn was charged with stalking, criminal restraint, endangerment of a child, interference with law enforcement, criminal trespass, criminal damage to property, disorderly conduct, and reckless driving in Thomas County case No. 21CR139. The victim was A.H., whom Horn had dated. He was released on bond and ordered to have no contact with any alleged victims and to not consume alcohol or illegal drugs.

On September 13, 2021, Horn pled guilty to stalking, criminal restraint, and endangerment of a child, all class A person misdemeanors. The State dismissed the other charges. The court sentenced Horn to 12 months' supervised probation with an underlying 12-month jail sentence. As conditions of his probation, the court ordered Horn to not consume any alcohol and to not have any direct or indirect contact with A.H., her children, or B.V. The no-contact order stated: "This includes buying the children, [A.H.,] or [B.V.] gifts and dropping them off at their house. . . ."

On October 1, 2021, the State moved to revoke Horn's probation alleging Horn violated the conditions of his probation by going to Dillons (where there was a current no-trespass order barring him from the store) and telling an employee that he would cut her son's throat. Horn was arrested and detained.

Horn stipulated to the violation. The court reinstated and extended Horn's probation for 12 months. He was ordered to be released on November 25, 2021, at 9 a.m.

In January 2022, the State moved again to revoke probation, alleging Horn violated the conditions of his probation. The accompanying affidavit stated A.H. contacted police on November 25, 2021, advising that Horn drove by her residence and placed a "gift" on her front porch. On November 26, 2021, Dustin Munk called the court

2

services officer advising that Horn showed up at his residence in Burlington, Colorado. Horn had been drinking and smoking methamphetamine and had threatened to kill himself. Munk also advised that Horn had contact with A.H.

At the hearing on the motion, Anne Ogle, court services officer, testified. The State first asked her about her supervision of Horn when he was placed on bond in July 2021. Horn objected, "Relevance. We're here on a probation violation, not a bond violation hearing, Your Honor. This is just unnecessary." The court overruled the objection. Ogle testified Horn only lasted one night on bond supervision. He scored .012 on his preliminary breath. Horn admitted he drank four to five beers the night before.

Ogle testified that Horn was released back on probation on the morning of November 25. That afternoon, Corporal Cole Andreasen contacted Ogle because Horn had attempted to contact the victim in this case. He dropped off a "gift" on her porch.

Corporal Andreasen testified A.H. called him about a gift that had been dropped off on her front doorstep. The corporal did not see what the present was. He just saw "a screw box, like a box that screws come in." He did not see a message on it. He asked A.H.'s boyfriend, Brandon Butters, to open the box to make sure there was not anything "alarming" in it. Butters did and said there was not anything alarming. Andreasen could not locate Horn.

Butters testified he heard a knock on the door and then saw Horn jump into a vehicle and drive away. He found the box, which contained a letter for A.H. and a promise or engagement ring. Horn's name was not on it. Butters testified he showed the ring to law enforcement.

A.H. testified she was present when Butters saw Horn. She did not want to see Horn, so she did not look outside. She testified the box contained a ring and two letters.

She threw it in the trash but was later told to keep it for evidence. She gave the letters to the county attorney on the day of the hearing. The State moved to admit the letters into evidence. Horn objected, "I would object to foundation because we don't know who created the record—the letter. . . . We don't know who wrote the letter." The court overruled the objection and admitted the letter.

The short letter stated:  "So I bought this for you in July but never gave it to you, I truly mean what this symbolizes. It is your [indiscernible] do with it what you want. I'm sorry for everything." She believed it was Horn's handwriting. The letter also contained an infinity symbol, which Horn had put on flowers he had given her before. The long letter was to A.H.'s father, who was deceased, asking for his permission to marry her.

A.H. gave the prosecutor the ring shortly before the hearing. During her testimony, the county attorney stated he had the ring in his hand. He offered it into evidence. Horn objected "based off of lack of foundation. It was just received today. And also, it looks like a ring that [the county attorney] wears a lot, so—." The court overruled the objection and admitted the ring. A.H. testified that she had shown the ring to Corporal Andreasen.

A.H. testified that she was "terrified" of Horn and did not want to be in the same room with him. He had previously physically harmed her and told her he would never leave her alone. She believed he would kill her if he was released.

Horn argued A.H. and Butters were not credible because they did not give the letters and ring to law enforcement on the day of the incident and there was no mention of either in the affidavit.

The court talked about looking at the big picture:

4

"I think this all basically started back in July of last year. . . . 16 days since this has started, maybe 17, that he hasn't been in jail. And we've had bond hearings, we've had probation revocation hearings.

". . . [W]hat I've got to look at is protecting the public too. . . . I think it's way beyond a preponderance, way beyond clear and convincing. I think he's not amenable. He's had so many failures here, and it's almost like it's a game, and people need to be protected."

The court found Horn was not amenable to probation and revoked his probation in case Nos. 21CR139, 21CR155, and 21CR178, and ordered him to serve his underlying jail sentences consecutively.

When the original crime of conviction was a misdemeanor and a probation violation is established, the court generally has discretion to continue or modify probation, impose a jail sanction, or revoke probation and require the defendant to serve their sentence. K.S.A. 2021 Supp. 22-3716(b)(3)(B); *State v. Hunter*, No. 117,304, 2017 WL 6062922, at *2 (Kan. App. 2017) (unpublished opinion).

Probation is an act of judicial leniency afforded a defendant as a privilege rather than a right. *State v. Gary*, 282 Kan. 232, 237, 144 P.3d 634 (2006). A trial court's decision to revoke probation usually involves two steps:
  (1) A factual determination that the probationer has violated a condition of probation; and
  (2) a discretionary determination regarding the appropriate disposition in light of the proved violations.
*State v. Skolaut*, 286 Kan. 219, 227, 182 P.3d 1231 (2008).

The State must establish that the probationer violated the terms of probation by a preponderance of the evidence—or that the violation is more probably true than not true.

5

*State v. Lloyd*, 52 Kan. App. 2d 780, 782, 375 P.3d 1013 (2016). And appellate courts review the trial court's factual findings for substantial competent evidence. *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007).

A probationer at a probation violation hearing is not afforded "the full panoply of rights due in a criminal prosecution." Rather, probation revocation proceedings must comport with "minimum due process." *State v. Marquis*, 292 Kan. 925, 928, 257 P.3d 775 (2011). These minimum due process rights include:

- written notice of the alleged violations;
- disclosure of the evidence against the probationer;
- the opportunity to be heard;
- the right to assistance of counsel;
- the right to confront witnesses;
- a neutral and detached hearing body; and
- a written statement by the fact-finder.

*State v. Hurley*, 303 Kan. 575, 582, 363 P.3d 1095 (2016).

When the question on appeal is whether the trial court complied with due process requirements when revoking probation, appellate courts have unlimited review. *Hurley*, 303 Kan. at 580.

On appeal, Horn argues the trial court violated his due process rights by admitting the letters and ring into evidence because the letters were not provided to defense counsel until 40 minutes before the hearing, and the ring was not disclosed until it was introduced at the hearing. Neither the letters nor the ring were even mentioned in the affidavit concerning the alleged probation violation.

The State contends this issue was not preserved for appellate review because Horn objected based on foundation, not a due process violation. The State alternatively argues

6

Horn received all the process he was due because the affidavit stated that Horn violated his probation by leaving a gift on A.H.'s front porch.

K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely and specific objection made on the record. *State v. Ballou*, 310 Kan. 591, 613-14, 448 P.3d 479 (2019). A party may not object at trial to the admission of evidence on one ground and then on appeal argue a different ground. *State v. George*, 311 Kan. 693, 701, 466 P.3d 469 (2020). Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Pearce*, 314 Kan. 475, 484, 500 P.3d 528 (2021). Kansas Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 36) requires an appellant raising a constitutional issue for the first time on appeal to affirmatively invoke and argue an exception to the general rule, or the claim is considered abandoned. See *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015), where our Supreme Court declined to reach the merits of Godfrey's due process claim that was raised for the first time on appeal.

Concerning the admission of the letters, Horn objected, "I would object to foundation because we don't know who created the record—the letter. . . . We don't know who wrote the letter." Concerning the ring, Horn objected "based off of lack of foundation. It was just received today. And also, it looks like a ring that [the county attorney] wears a lot, so—."

We find Horn has failed to preserve his due process challenge for this court's review. Horn's foundation objections did not signal to the court that he believed the failure to disclose this evidence was a due process violation. That might have triggered further discussion about why the evidence was not provided earlier. Horn does not argue on appeal the the court should reach the merits of his argument despite his failure to raise the due process issue below. Therefore, he abandoned this claim.

Horn also contends the trial court erred by admitting testimony concerning his alleged bond violations. He argues his bond violation should have been excluded under K.S.A. 60-455 because it created an unfair inference that he violated the conditions of his probation because he had violated his bond conditions. The court mentioned Horn's bond supervision in its ruling.

The State argues Horn did not preserve this issue for appellate review because Horn objected based on relevance, not on K.S.A. 60-455 grounds. Horn did not argue that bond violations were being improperly used to prove his disposition to commit the probation violations. The State alternatively argues the evidence was admissible to show that Horn was not amenable to probation.

Generally, "evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." K.S.A. 2021 Supp. 60-455(a). But such evidence is admissible "when relevant to prove some other material fact including motive, opportunity, intent preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2021 Supp. 60-455(b).

The contemporaneous objection rule applies to evidence alleged to be admitted in violation of K.S.A. 60-455. *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012). A defendant cannot object at trial based on relevancy and then rely on K.S.A. 60-455 on appeal. Where the issue of admissibility under K.S.A. 60-455 was never brought up on the record, appellate courts must conclude the trial court correctly applied K.S.A. 60-455. *State v. Moncla*, 262 Kan. 58, 67-68, 936 P.2d 727 (1997).

At the hearing, Horn objected: "Relevance. We're here on a probation violation, not a bond violation hearing, Your Honor. This is just unnecessary."

We find Horn did not preserve this issue for our review. He objected based only on relevance. Nothing in the record shows the trial court understood K.S.A. 60-455 as the basis of Horn's objection. The trial court was not given the opportunity to clarify why it mentioned the bond hearing in its ruling because this issue was not raised to the trial court. In its ruling, the trial court decided both that the State had proven Horn violated his probation and that Horn was not amenable to probation. The trial court did not err.

Affirmed.